ASSETS REALIZATION COMPANY, Appellant, v. PHILIP W. ROTH, Respondent.

Guaranty and suretyship — bond to protect bank acting as liquidator of an insolvent bank, for advances made to pay debts of latter bank — when assignee of liquidator bank may maintain action against indemnitors under such bond.

1. A bank being in financial straits and determining to go into voluntary liquidation made an agreement with another bank, selected as liquidator, which was to advance moneys sufficient to pay all the depositors of the liquidating bank in full, in consideration of which and as security therefor it received a pledge of all the assets and property of the liquidating bank. This action is brought by the assignee of a bond which was delivered to the liquidator by defendant and other officers and stockholders of the liquidating bank to indemnify the former bank from and against all loss, damage or injury which it might sustain by reason of advances made pursuant to the agreement and from all costs and expenses growing thereout. *Held*, that such bond is not a contract of guaranty, but of indemnity, and the liability assumed by the signers thereof is not secondary but primary, and this is not a case for the application of the strict rules that may be enforced for the relief of voluntary indemnitors. (*Assets Realization Co.* v. *Howard*, 211 N. Y. 430, followed.)

2. Where such liquidator bank after paying in full all of the depositors of the liquidating bank by advancing a large sum of money for that purpose and after collecting most of the assets pledged to it as security, was itself forced by the state into the hands of a receiver who sold the remaining assets and assigned the bond in question to the plaintiff, the defendant is not released because the liquidator bank, by a decree of dissolution, died before the liquidation was complete. The forced dissolution of the liquidator bank was not equivalent to a voluntary abandonment of the task of liquidation. The bank did not seek dissolution, ridding itself of its agreement as a vexatious burden, but dissolution was forced upon it by the action of the state.

*Assets Realization Co.* v. *Roth*, 179 App. Div. 324, reversed.

(Argued April 23, 1919; decided May 20, 1919.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial

department, entered July 16, 1917, unanimously affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Carlos C. Alden* and *Warren Tubbs* for appellant. The agreement entered into by Roth and his associates was not a guaranty, but was an original promise to indemnify, with no right of recourse over. (*Assets Realization Co.* v. *Howard,* 211 N. Y. 430; *Nat. Bank* v. *Smith,* 142 Ga. 663; *Moss* v. *McCullough,* 7 Barb. 279; *Corning* v. *McCullough,* 1 N. Y. 47; *Harger* v. *McCullough,* 2 Denio, 110.) Such an original promise is not released by the dissolution of the corporation promisee. (*Wolfe* v. *Howes,* 20 N. Y. 197; *Clark* v. *Gilbert,* 26 N. Y. 282; *People* v. *Globe Mut. L. Ins. Co.,* 91 N. Y. 174; *Hepburn* v. *Montgomery,* 97 N. Y. 617; *Lorillard* v. *Clyde,* 142 N. Y. 456; *New York Phonograph Co.* v. *Davega,* 127 App. Div. 222; *Mason* v. *Standard Distilling Co.,* 85 App. Div. 520; *Columbus Trust Co.* v. *Moshier,* 51 Misc. Rep. 270; 121 App. Div. 906; 193 N. Y. 660.)

*W. C. Carroll* for respondent. The terms of the contract of guaranty provided for a liquidation of the assets of the Metropolitan Bank by the German Bank fully completed before any cause of action could arise therefrom. (*Catskill Bank* v. *Dumary,* 206 N. Y. 550; *Barnes* v. *Arnold,* 23 Misc. Rep. 207.) A full performance of all the conditions precedent by the German Bank must be shown before a cause of action could accrue to the German Bank. The fact of non-performance was undisputed. (*Brumm* v. *Gilbert,* 50 App. Div. 430; *Evansville Bank* v. *Krauffman,* 43 N. Y. 273; *Everson* v. *Gere,* 122 N. Y. 290; *Stillman* v. *Northrup,* 109 N. Y. 473; *Levy* v. *Cohen,* 103 App. Div. 196; *Herendeen* v. *Wilson,* 82 Misc. Rep. 290; *Barnes* v. *Barrow,* 61 N. Y. 39; *Hamilton Trust Co.*

v. *Shevlin*, 156 App. Div. 307; *National Bank* v. *Conkling*, 90 N. Y. 121; *Fitch* v. *Fraser*, 84 App. Div. 119.) The dissolution of the German Bank rendered performance by it of the liquidation of the Metropolitan Bank impossible. The German Bank being incapable of completing the liquidation, the guarantors whose obligations were executory and dependent upon and enforcible only after complete liquidation by the German Bank, were discharged. (*People* v. *Globe M. L. Ins. Co.*, 91 N. Y. 174; *Lorillard* v. *Clyde*, 142 N. Y. 450; *Mason* v. *Standard Distilling Co.*, 85 App. Div. 520; *Columbus Trust Co.* v. *Moshier*, 51 Misc. Rep. 270; 121 App. Div. 906; 193 N. Y. 660.)

CARDOZO, J. In August, 1901, the Metropolitan Bank of Buffalo found itself in financial straits. It determined to go into voluntary liquidation and avoid the expense of a receivership. The liquidator selected was the German Bank of the same place. The rights and duties of the two banks are set forth in a written contract. The German Bank was to advance sufficient moneys to pay all the depositors of the Metropolitan Bank in full. It was also to make advances for other purposes. In return and as security for these advances, it received a pledge of all the " assets, property, and effects of every name, nature, and kind " belonging to the liquidated bank. In the management of the property and in the conversion of the assets into money, due diligence was to be used " to make the conversion as rapidly as it can be done without undue sacrifice." There was to be delivered to the liquidator by the Metropolitan Bank " a proper guaranty of certain of its directors and stockholders " against any and all loss as a result of the advances.

This action is brought upon a bond delivered to the liquidator in fulfillment of that covenant. The signers were officers and stockholders of the Metropolitan Bank. Each became severally liable for an amount

equal to the par value of his shares. The limit of the
aggregate liability of all subscribers was $57,200. The
limit of the defendant's liability was $21,200. The bond
recites the voluntary liquidation of the Metropolitan
Bank, the request that the German Bank undertake
the work of liquidation, and the covenant to furnish
to the liquidator " a guarantee against loss." The
recitals are followed by a covenant in these words:
" We, the undersigned, all of Buffalo, New York, do
hereby covenant and agree, each for himself and not
for the other, to and with the said German Bank that we
will at all times hereafter keep and save harmless and
indemnify the said The German Bank of, from and
against all loss, damage or injury which it may in any
manner sustain by reason of any and every advance
which it may make pursuant to the aforesaid agreement,
and of and from all costs or expenses that may in any
manner grow thereout."

The German Bank took over the assets of the Metro-
politan Bank. It paid all the depositors in full. It did
this at once; and for that purpose advanced nearly
$800,000. It then went on with the work of liquidation.
It had almost finished its task when it too faced disaster.
On December 21, 1904, at the suit of the attorney-general
of the state, its dissolution was decreed, and a receiver
was appointed. Over $830,000 had then been realized
from the assets. The receiver collected about $3,500
more, and sold the few remaining assets to the plaintiff.
They were, in part at least, the odd and ends that almost
always remain upon the winding up of any business.
From this remnant of assets the plaintiff succeeded in
extracting about $34,000. It did this in co-operation
with the defendant and his associates. There is no
reason to believe that better results could have been
realized by any one. It thus appears that 96 per cent of
the total assets had been liquidated by the German
Bank before its dissolution. With the added four per

cent produced through the efforts of the receiver and the plaintiff, the proceeds, after deducting expenses, are insufficient to repay the liquidator's advances. There remains a deficit of nearly $250,000. The plaintiff, as the assignee of the bond of indemnity, brings this action to charge the defendant with his proportion of the loss.

The courts below have held that the defendant has been released because the liquidator died before the liquidation was complete. They have viewed the bond as a guaranty, and its signers as guarantors. The decree of dissolution put an end to the liquidator's life. Liquidation in its final stages was the work of substituted agencies. The bond has been read as containing an implied condition that the liquidator shall bear the loss resulting from its advances unless personal performance of its task shall be continued to the end, and this though personal performance has been made impossible by death.

We reach a different conclusion. The bond which this defendant signed is not a contract of guaranty. It is a contract of indemnity (1 Brandt on Suretyship and Guaranty, pp. 19, 20; *Jones* v. *Bacon*, 145 N. Y. 446; *Same* v. *Same*, 72 Hun, 506; *Guild* v. *Conrad*, 1894, 2 Q. B. 885; *Nat. Bank* v. *Smith*, 142 Ga. 663, 665). The liability assumed is not secondary, but primary. We so held in *Assets Realization Co.* v. *Howard* (211 N. Y. 430). There an action was brought against this defendant and others to charge them as stockholders of the Metropolitan Bank with the statutory liability for debts. We held that the liquidator's advances did not constitute a debt; that the stockholders were not liable under the statute; and that the liquidator, having exhausted the assets, had no security for the deficit except the contract of indemnity. The defendant helped to induce that ruling when the result was to his advantage. We will not change it at his instance now when the result is to his detriment. This is no case, therefore, for the application of the strict rules that are enforced at times for

the relief of voluntary guarantors (*Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416, 426; *Ill. Surety Co.* v. *Davis Co.*, 244 U. S. 376; *St. John's College* v. *Ætna Ind. Co.*, 201 N. Y. 335, 341). We do not say that even under those rules the defendant would be discharged (*Wilkinson* v. *McKimmie*, 229 U. S. 590, 593; *Equitable Surety Co.* v. *McMillan*, 234 U. S. 448, 458; *U. S.* v. *U. S. Fidelity & G. Co.*, 236 U. S. 512, 524: *Richardson,* v. *County of Steuben*, 226 N. Y. 13). That question is not here. The defendant and his associates had a business interest to protect, and in order to protect it they assumed a primary liability as insurers against loss. The liability is not to be whittled down by the implication of conditions not fairly and reasonably involved in the gist and scheme of the transaction.

We think the gist and scheme of this transaction do not fairly and reasonably involve the implication of a condition that the death of the liquidator, leaving assets unadministered, shall cancel the right to indemnity for advances during life. Nearly $800,000 was owing to depositors. Liquidation through voluntary agents was impossible unless those debts were paid at once. The German Bank was advancing the money necessary to pay them. Loss resulting from the advances was the risk that was in view; protection against such loss the controlling purpose of the bond. The moment advances were made, the risk had been incurred, and the duty to indemnify arose. Liquidation was not the act on which the right to indemnity was to depend. Liquidation was merely the means by which the measure of the loss was to be gauged. The agencies of liquidation were defined during the liquidator's life. They were not defined after its death. They might, therefore, be any agencies appropriate in that contingency for the ascertainment of the loss. The death of the liquidator did not wipe out the advances, and business men cannot have expected it to wipe out the covenant. If loss could not be ascertained

in one way, it would have to be ascertained in another. The last thing they can have expected was that it would not be ascertained at all.

The case for the defendant is built upon the assumption that the sole relation between the banks was one of personal employment, which the death of either would extinguish (*Lacy* v. *Getman*, 119 N. Y. 109; *Wolfe* v. *Howes*, 20 N. Y. 197; *People* v. *Globe Mutual Life Ins. Co.*, 91 N. Y. 174; *Dolan* v. *Rodgers*, 149 N. Y. 489, 494). The relation was that, but it was something more. The German Bank was an agent. But it was also a pledgee. The two functions and capacities were inseparably commingled. Death might terminate the agency. It could not terminate the pledge (*Terwilliger* v. *Ontario, C. & S. R. R. Co.*, 149 N. Y. 86, 93). There was no duty to surrender the pledged assets because the liquidator was dead. The right to retain and collect them passed from the pledgee to its successor, and its successor was the receiver. To avail himself of the pledge, the receiver had to convert it into money (*Brightson* v. *Claflin*, 225 N. Y. 469). He could not convert it into money, and thus exercise his rights as a pledgee, without becoming at the same time a liquidator. He might not liquidate in the same way as his predecessor, but he would do it in some way, and the process, whatever its form, would ascertain and fix the loss. All this the defendant and his associates, if they thought about the consequences of death at all, must have foreseen and approved. To everything that was essential to the enforcement of the pledge by the successors of the pledgee, they must be taken to have given their assent. This would be true though their position were strictly that of guarantors. Sureties on a bond " have no right to insist upon a sacrosanct prohibition of change " in the performance of a contract ( *U. S.* v. *McMullen*, 222 U. S. 460, 468; *Tide Water Oil Co.* v. *Globe Ind. Co.*, 238 Fed. Rep. 157). They may assent to change if they

will. " Whether they have done so is simply a question of construction and good sense, taking words and circumstances into account " ( *U. S.* v. *McMullen, supra*). The reasonable and probable fix the bounds of contemplation. A covenant of indemnity is not discharged because the subject of the pledge is sold by the executors of the pledgee. The result is not different where, upon the dissolution of a corporation, the sale is made by a receiver. All that the defendant may insist upon is a conversion of the assets into money by the liquidator, if alive, and, if dead, by its successors. There has been no departure from that course in anything that has been done. The loss has been ascertained, and the defendant's duty is to pay it.

The defendant argues that the dissolution of the German Bank was equivalent to a voluntary abandonment of the task of liquidation (*People* v. *Globe Mut. Life Ins. Co., supra,* 181; *Lorillard* v. *Clyde,* 142 N. Y. 456). We think there is nothing in the point. The bank did not seek dissolution, ridding itself of its agreement as of some vexatious burden. Dissolution was forced upon it by the action of the state. The result did not cease to be involuntary because insolvency may have been due to negligence or other wrong. (*People* v. *Globe Mut. Life Ins. Co., supra*). Mistakes, with corporations as with men, are often paid for in shortened lives. But error is not suicide.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, POUND, CRANE and ANDREWS, JJ., concur; CUDDEBACK, J., not voting.

Judgment reversed, etc.