## HOWELL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9674.

Circuit Court of Appeals, Eighth Circuit.

Feb. 20, 1934.

Rehearing Denied March 31, 1934.

Daniel V. Howell, of Kansas City, Mo. (Charles M. Howell, Jr., of Kansas City, Mo., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals determining a deficiency of $6,595.85 in income taxes of the petitioner for the calendar year 1922.

The People's Trust Company, a bank doing business in Kansas City, Mo., had acquired, prior to April 25, 1922, through the firm of Smith and Ricker, notes secured by chattel mortgages on cattle and mortgages on ranch lands, which notes were guaranteed by that firm. In the spring of 1922 Smith and Ricker became involved financially, and made an assignment for the benefit of their creditors. The members of the firm were large stockholders of the bank, and Ricker was chairman of its board of directors. Smith had been connected with the Commonwealth National Bank of Kansas City, which had failed in January, 1922. The value of cattle and farm lands had slumped and "cattle paper" was not highly regarded. On April 25, 1922, the bank (People's Trust Company) had $406,969.12 of such paper, referred to as "Smith and Ricker loans." On March 14, 1922, at a meeting of the board of directors, the president of the bank had stated that, because of the close connection of Smith and Ricker with the bank and because of their financial difficulties, there might be trouble for the bank, and that it might "serve a useful purpose and ease public opinion" with regard to the bank if the board of directors and the stockholders would guarantee the bank against loss on the paper obtained through Smith and Ricker, and if Smith and Ricker would sell their stock to other stockholders and retire from the board. The minutes of the bank show that at a meeting of directors on April 11, 1922, the petitioner, Charles M. Howell, a director and stockholder of the bank, had read to the board a proposed contract "providing for the guaranty of $200,000.00 against the paper from the office of Smith and Ricker and the pledging of the money and securities to protect that guaranty." Mr. Howell, Mr. Garvey, and Mr. Alves, stockholders of the bank, were appointed a committee "to serve in caring for and carrying out that agreement." Some time between March 14th and April 25th, Smith and Ricker had severed their connection with the bank and sold their stock to other stockholders.

The agreement to protect the bank against losses on the Smith and Ricker paper was made on April 25, 1922. It is entitled, "Indemnity Agreement." It is signed by the stockholders of the bank, who are referred to throughout as "the indemnitors." The undertaking of the signers was "to severally indemnify the Company [the Bank] in the maximum amount of $200,000.00 against loss, if any, which may be hereafter sustained on account of non-payment of certain loans now held by the Company in its assets and commonly designated as the Smith and Ricker loans." The full text of the agreement, omitting the schedule of stockholders and of notes, is set out in the margin.[1] The peti-

---

[1] Indemnity Agreement.

This Agreement by and between the Peoples Trust Company of Kansas City, Missouri, a corporation engaged in the banking business (herein designated "Company") First Party, and the under-

tioner, who is one of the leading lawyers of Kansas City, drafted this agreement and was one of its signers. His share of the indemnity fund was $23,480. The loss to the bank, on account of this Smith and Ricker paper, was $288,541.66, most of the paper being worthless, and the committee, in December, 1922, paid into the bank $200,000 pursuant to the agreement.

Mr. Howell was of the opinion that, by reason of the agreement and his payment of $23,480 thereunder, the relation of creditor and debtors was created between him and the makers of the worthless notes to that extent, and that therefore, in computing his net income for the year 1922, he was entitled to take a deduction of that amount as "debts ascertained to be worthless and charged off

---

signed, Chas. S. Alves, Wilson D. Wood, J. T. Duncan, R. P. Combs, Aldridge Corder, Helene Corder, J. C. Davis, E. T. Richards, Bruce Dodson, J. W. Garvey, W. T. Grant, George T. Cook, Ethel B. Cook, R. L. Mehornay, O. F. Mehornay, R. B. Garvey. Chas. M. Howell, T. H. Mastin, U. S. Epperson, J. J. Lynn, H. E. Minty, G. M. Payne, W. F. Waller, F. L. Zahner, E. F. Swinney, Jno. A. Siemon (herein designated "Indemnitors") Second Parties, Witnesseth:

(1) That for and in consideration of the payment of One Dollar ($1.00) to the Indemnitors by the Company, the receipt of which is hereby acknowledged, and other valuable consideration, the Indemnitors hereby agree to severally indemnify the Company in the maximum amount of Two Hundred Thousand Dollars ($200,000.00) against loss, if any, which may be hereafter sustained on account of non-payment of certain loans now held by the Company in its assets and commonly designated as the Smith and Ricker loans. For identification, a Schedule of said loans is hereto attached and marked "Exhibit A."

(2) The indemnification herein provided for shall be several and not joint and no joint liability as between the Indemnitors is intended to be created by this instrument. Each Indemnitor hereby assumes and agrees to pay as and when same occur any loss or losses not exceeding in total Two Hundred Thousand Dollars ($200,000.00) resulting to the Company on account of said loans to the extent and in the proportion only that the stock held by him in said Company at the time of the execution of this agreement bears to the total of all the capital stock of said Company then outstanding.

(3) For the purpose of securing the payment by each Indemnitor of any sums which he may be obligated to pay under this Agreement, each Indemnitor agrees to deposit within ten (10) days after the execution of this Agreement in cash or in bonds of the United States Government, an amount equal to that proportion of Two Hundred Thousand Dollars ($200,-000.00) which the stock owned by said Indemnitor bears to the total of all of the stock of the Company. Said cash or secu-

rities shall be deposited with a committee composed of J. W. Garvey, Chas. S. Alves and Chas. M. Howell. Said committee shall have full power and authority to dispose of any or all of the securities belonging to any Indemnitor, in the event said Indemnitor does not meet the payments required of him, as herein provided, and to use the proceeds of any such sale for the purpose of liquidating the obligations of any such Indemnitor created by this Agreement as they may appear.

(4) It is intended and agreed that as and when losses on said loans shall occur, each Indemnitor will pay his respective portion to the Company in cash and that upon such payment a proportionate part of the securities deposited by each Indemnitor respectively shall be returned to him by the committee hereinbefore provided for.

(5) Subject to the obligations imposed by this Agreement, the cash or securities deposited by the Indemnitors shall be and remain the property of the Indemnitor respectively depositing same and all interest accruing on said securities shall accrue to and be paid to such Indemnitor.

(6) When all of the loans referred to herein and specified in "Exhibit A" have either been paid or the loss, if any, on account of non-payment of any of them shall have been determined and the indemnity thereon paid to the Company, as herein provided for, the committee named in Section Three shall make a written accounting to each Indemnitor and shall return to each the cash or bonds deposited by him, less any deductions made therefrom in accordance with the provisions of Sections Three and Four hereof. Said committee is hereby empowered and authorized to do any and all things necessary to carry out the terms of this contract according to its true intent and purpose.

(7) The undersigned Indemnitors have respectively set opposite their names the amount of stock held by them at the time of the execution of this agreement, together with the amount of cash or securities which each respectively agrees to deposit as herein provided for.

Signed at Kansas City, Missouri, this 25th day of April, 1922.

within the taxable year." Subdivision (7), § 214 (a), Revenue Act of 1921, c. 136, 42 Stat. 227, 239.

The Commissioner of Internal Revenue refused to allow the deduction, and, upon appeal, the Board of Tax Appeals sustained the Commissioner. 22 B. T. A. 140. Hence the alleged deficiency in the tax and this petition to review.

The only question to be decided is whether, by virtue of the agreement which Mr. Howell signed and his payment thereunder to the Bank, he acquired "debts ascertained to be worthless."

Mr. Howell's position is that, whatever the agreement be called, whether suretyship, guaranty or indemnity, he became, upon the payment of his $23,480 by the committee to the bank, a creditor of the makers of the worthless notes, either because of an implied obligation on their part to indemnify him or because he was, in effect, a purchaser of the notes to the extent of what he paid. No claim of subrogation to any of the rights of the bank against the makers of the notes is made by the petitioner.

The Commissioner and the Board were of the opinion that the agreement was a contract to indemnify the bank in case of loss, that it was entirely independent of the notes, and that there was at no time any obligation on the part of the makers of the notes to repay Mr. Howell the $23,480 which he contributed, and hence no debts which he could charge off.

That in the case of suretyship or guaranty there is an implied agreement on the part of the principal debtor to reimburse his surety or guarantor is unquestioned. See Mellette Farmers' Elevator Co. v. H. Poehler Co. (D. C.) 18 F.(2d) 430; In re Dailey et al. (D. C.) 19 F.(2d) 95; United States Fidelity & Guaranty Co. v. Centropolis Bank of Kansas City, Mo. (C. C. A. 8) 17 F.(2d) 913, 917, 53 A. L. R. 295; National Surety Co. v. Salt Lake County (C. C. A. 8) 5 F. (2d) 34; (compare Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874) ; 28 C. J. 1037.

"From the time of the very earliest cases there has been a general acquiescence in the rule that a payment by a surety or guarantor for the account of their principal is presumed to be at the request of the latter, which raises an implied promise of reimbursement, upon which an action at law will lie." Stearns on Suretyship (3d Ed.) page 503.

There are recognized distinctions between suretyship, guaranty, and indemnity.

■ A surety and a guarantor are answerable for the debt, default, or miscarriage of another. Strictly speaking, the liability of a guarantor is secondary and collateral, and its enforcement depends upon certain conditions. The liability of a surety is original, primary, and direct. The surety is bound by the same agreement which binds his principal, while a guarantor is bound by his own independent undertaking. Transcontinental Petroleum Co. v. Interocean Oil Co. (C. C. A. 8) 262 F. 278, 279, 283; Hall et al. v. Weaver (C. C.) 34 F. 104, 106. "In case of suretyship there is but one contract, binding the surety and the promisor, but in the case of a guaranty there are two contracts, one binding the principal debtor, and one binding the guarantor." Peterson et al. v. Miller Rubber Co. of New York (C. C. A. 8) 24 F. (2d) 59, 62.

Without a principal debt for which the guarantor is answerable, there can be no guaranty, so that an undertaking by a buyer that it would pay to a bank a sum of money for the seller's account upon the delivery of a ship which the seller was building for the buyer was not a guaranty, but a conditional promise to pay. Yangtsze Rapid S. S. Co. v. Deutsch-Asiatische Bank (C. C. A. 9) 59 F.(2d) 8, 11, 12.

■ A contract of indemnity is an original undertaking independent of any collateral contract. It creates a primary liability. The promise of the indemnitor is not to answer for the debt, default, or miscarriage of another, but may be to make good the loss resulting from such debt, default, or miscarriage. 28 C. J. 892; Eckhart v. Heier, 37 S. D. 382, 158 N. W. 403; Assets Realization Co. v. Roth, 226 N. Y. 370, 123 N. E. 743; National Bank of Tifton v. Smith, 142 Ga. 663, 83 S. E. 526, L. R. A. 1915B, 1116, 1117; 14 R. C. L. 43. While the object of a guaranty and an indemnity agreement may be the same—to save the promisee from loss —the legal effect is different. One guarantees the performance of an obligation according to its terms. A nonperformance of the obligation constitutes a breach of the guaranty agreement giving rise to the liability of the guarantor. The other indemnifies against loss in case of nonperformance, the failure to perform does not create the liability, and there is no liability until the ascertainment of a loss therefrom. See Weightman v. Union Trust Co., 208 Pa. 449, 451, 57 A. 879; Assets Realization Co. v. Roth, supra; Eckhart v. Heier, supra; 14 R. C. L. 44.

As was pointed out by this court in U. S. F. & G. Co. v. Centropolis Bank of Kansas City, Mo., supra, on page 916 of 17 F. (2d) the agreement of a principal to indemnify his surety for any payment the surety may be compelled to make takes effect from the time the surety becomes responsible for the obligation of the principal. The assumption of responsibility for the performance of the principal's obligation raises the implied agreement of the principal to indemnify the surety. The payment by the surety fixes the amount of damages for which the principal is liable under his implied agreement to indemnify, and until such payment the surety is in much the same position as a creditor holding an unliquidated claim. Mellette Farmers' Elevator Co. v. H. Poehler Co., supra; 14 R. C. L. 51.

While with respect to suretyship and guaranty, there is an implied obligation of the principal to reimburse the surety or guarantor, a promise to indemnify will not be implied where the guarantor is a mere volunteer and signs without request of the principal, either express or implied. Stearns on Suretyship (3d Ed.) p. 506; Brandt, Suretyship and Guaranty (3d Ed.) vol. 1, p. 463. It has been held, however, that such a guarantor may recover from the principal debtor upon the theory that his rights, after payment of the debt, are, in equity, those of a purchaser of the note. Leslie v. Compton, 103 Kan. 92, 172 P. 1015, L. R. A. 1918F, 706; Teberg v. Swenson, 32 Kan. 224, 4 P. 83; Carter v. Jones, 40 N. C. (5 Ired.) 196, 49 Am. Dec. 425; Wright v. Garlinghouse, 27 Barb. (N. Y.) 474; Marsh v. Hayford, 80 Me. 97, 13 A. 271; Heeker v. Mahler, 64 Ohio St. 398, 60 N. E. 555; Snell v. Warner, 63 Ill. 176; Peake v. Dorwin, 25 Vt. 28; Briscol v. American Southern Trust Co., 176 Ark. 401, 4 S.W.(2d) 912. This is nothing more than an application of the equitable doctrine of subrogation. 12 R. C. L. 1098.

Although the ordinary surety or guarantor is a creditor of the principal debtor, the same cannot be true of an indemnitor who does not undertake to assume or discharge the obligations of another, but has, on his own account, contracted to pay a sum of money upon the occurrence of a certain event, usually the happening or the ascertainment of a loss. There is no privity, either actual or implied, between the promisor in the undertaking the loss from the nonperformance of which is indemnified against and the indemnitor, and the latter, if the loss occurs, does not, by payment of it, discharge any one's obligation but his own.

"The indemnitor is liable only to the indemnitee, and his assigns, and, unless he has stipulated for it, he has no remedy over against the party for whose benefit the contract was made." Brandt, Suretyship and Guaranty (3d Ed.) vol. I, p. 20.

An indemnitor may, under certain circumstances, by virtue of subrogation, acquire the rights of his indemnitee. 60 C. J. 781; Jones v. Bacon, 72 Hun, 506, 25 N. Y. S. 212, affirmed 145 N. Y. 446, 40 N. E. 216.

It is clear that the contract with which we are dealing is not a contract of either suretyship or guaranty. It is suggested by the petitioner that it is not strictly a contract of indemnity. It is obvious that, whatever it be called, its purpose was to insure the bank to the extent of $200,000 against loss upon the Smith and Ricker paper, and thereby to protect the bank against a possible run and prevent a serious impairment of its assets. There was no intention on the part of the stockholders to acquire the notes or any interest in them or to discharge the obligations of the makers of the notes. So far as the indemnitors were concerned, they were interested in these notes only as assets of the bank. Had the doubtful assets been other than notes, no doubt the same agreement would have been made. After the payment of the $200,000 to the bank, the conduct of the parties indicates that the relation of the bank to the makers of the notes, and the obligation of the makers to pay the bank, remained the same as before. The bank dealt with the notes as its own, and obtained what it could from them by collection, compromise, or sale. It is evident that neither the bank nor the indemnitors considered that the indemnitors had acquired any interest in these notes by virtue of the payment or that the makers of the notes were obligated to any one except the bank.

Our opinion is that no part of the worthless notes referred to in the indemnity agreement could be deducted by Mr. Howell in the computation of his income tax.

The petition to review is therefore dismissed.