STATE–PLANTERS' BANK & TRUST CO.
et al. v. FIRST NAT. BANK OF
VICTORIA.*

No. 3789.

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

*Writ of certiorari denied 55 S. Ct. 923, 79 L. Ed. ——.

George E. Allen and A. S. Buford, Jr., both of Richmond, Va., for appellants.

James S. Easley, of Halifax, Va. (Henry C. Riely and McGuire, Riely & Eggleston, all of Richmond, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a notice of motion for judgment at law filed in the District Court of the United States for the Eastern District of Virginia, at Richmond, in July, 1933, by appellee, hereinafter referred to as the plaintiff, against the appellants, hereinafter referred to as the defendants. At the trial, before a jury in November, 1934, the judge below directed a verdict for the plaintiff as to the main items, submitting to the jury some disputed items aggregating several thousand dollars. The jury brought in a verdict for the plaintiff in the sum of $44,-620.33, upon which verdict judgment was entered, and from this judgment this appeal was brought. There is no question raised on appeal as to any of the items submitted to the jury and passed on by it.

The bank of Victoria, hereinafter referred to as the State Bank, and the First National Bank, hereinafter referred to as the National Bank, were formerly engaged in the banking business in Victoria, Va. In April, 1930, the officials of the State Bank, finding that bank involved to an extent that it made it necessary to take some steps to wind up its affairs, entered into a written contract with the National Bank, dated April 28, 1930, in which contract the National Bank agreed to take over and liquidate all of the assets of the State Bank and apply the funds realized, or their equivalent, to the liabilities of the State Bank. It was agreed that the National Bank should not settle any of the debts due the State Bank, for less than face value, without the approval of the State Bank, and that the latter bank should have general supervision over all matters connected with the liquidation. The book value of all the assets of the State Bank at the time this agreement was entered into, all of which assets were taken over by the National Bank, aggregated $288,321.90, and the total liabilities of the State Bank which, by the terms of the written contract, were assumed by the National Bank, aggregated $271,652.81. In the contract the National Bank agreed to purchase outright from the State Bank certain assets of a total agreed value of $26,770.82, reducing the liabilities of the State Bank, assumed by the National Bank, in that amount. In said contract the State Bank agreed to execute a note payable to the National Bank, two years after date, with a privilege of renewal or renewals, for a period not to exceed three years, for the exact total amount of the liabilities of the State Bank assumed by the National Bank ($244,-881.99) and assigned to the National Bank all the assets of the State Bank as security for said note. The State Bank further agreed to deliver to the National Bank an indemnifying bond of joint and several obligation, in the sum of $50,000, executed by the defendants, who were the officers and directors of the State Bank; the condition of the bond being to indemnify and save harmless the National Bank from all loss and damages of any and every nature whatsoever that should result to the National Bank by reason of the transaction, the bond to be canceled when the note hereinbefore mentioned, with interest, was paid. The National Bank agreed in the contract, among other things, to apply all the amounts collected from the assets of the State Bank, taken over by it, on the note and, as stated above, agreed to assume the liabilities of the State Bank as shown on the books of that bank at the time of the contract.

The note and bond mentioned in the contract were duly executed and delivered. The preambles, condition, and signatures of the bond read as follows:

"Whereas, the said The First National Bank of Victoria has become, or is about to become, the legal holder at our request of a certain promissory negotiable note, collateral in form, in the sum of two hundred and forty-four thousand eight hundred and eighty-one dollars and ninety-nine cents ($244,881.99) dated April 24, 1930, payable two years after date, with interest at 6% from date, payable monthly, to The First National Bank, Victoria, Virginia, or order, executed by E. L. Kendig, as President of the Bank of Victoria, attested by E. L. Gee, Vice-President of the Bank of Victoria with the corporate seal of the said Bank of Victoria annexed.

"And whereas, The said The First National Bank of Victoria has assumed, or is about to assume, certain obligations and liabilities of the Bank of Victoria, at our request, of the total sum of two hundred and seventy-one thousand six hundred and fifty-two and eighty-one cents ($271,652.81) more fully set forth in paragraph No. 13 of a certain contract entered into between the Bank of Victoria and the First National Bank of Victoria, dated April 28, 1930.

"Now the condition of the above obligation is such that if we, our heirs, executors or administrators shall at all times save harmless and keep indemnified the said The First National Bank of Victoria, Virginia, its successors and assigns against all suits, actions, debts, damages, costs, charges, and expenses and against all loss and damages whatsoever, that shall or may at any time happen or result to the said The First National Bank of Victoria its successors, or assigns, for or by reason of the said The First National Bank of Victoria becoming the holder of the said note as aforesaid, or any continuation or renewal thereof, and for or by reason of the said The First National Bank of Victoria assuming certain obligations and liabilities of the Bank of Victoria of the total sum of $271,652.81, as aforesaid, then this obligation to be void and of no effect otherwise to be and remain in full force and virtue in law.

"Witness our hands and seals this 25 day of April 1930.

| | |
|---|---|
| "E. L. Kendig | (Seal) |
| "E. L. Gee | (Seal) |
| "R. E. Stables | (Seal) |
| "R. B. Seaborn | (Seal) |
| "D. H. Lewis | (Seal) |
| "M. E. Gee | (Seal) |
| "L. M. Gary | (Seal) |
| "B. L. Winn | (Seal) |
| "R. B. Bridgforth | (Seal) |
| "W. P. Reed | (Seal)" |

Immediately following the execution of the contract, in the latter part of April, 1930, the assets of the State Bank were taken over by the National Bank, and until on or about February 4, 1932, the process of liquidation of the State Bank was carried on by the National Bank with the aid and assistance of the defendants and a committee named by them. All the deposits in the State Bank were paid or assumed by the National Bank, the checking accounts and certificates of deposit in the State Bank becoming checking accounts and certificates of deposit in the National Bank, the savings depositors in the State Bank surrendering their books and accepting in place thereof books showing savings deposits in the National Bank.

The National Bank having in turn become involved, it closed its doors on February 4, 1932, and one W. P. Lifsey was appointed as its receiver by the Comptroller of the Currency. Lifsey continued to serve as receiver of the National Bank to the close of business on September 15, 1932, when he was succeeded by the plaintiff. During the period of the liquidation of the State Bank by the National Bank and its receivers, all the sums realized from the assets of the State Bank had been applied upon the note executed by the State Bank and there remained a balance of $51,254.09.

On March 29, 1932, the board of directors of the State Bank passed a resolution requesting and demanding the renewal of the note, about to become due the following April, for the period of three years named in the original contract, and a copy of the resolution was served upon the receiver of the National Bank. In response to this resolution under date of April 5, 1932, the receiver wrote E. L. Kendig, as president of the State Bank, stating that in view of the fact that the liquidation of the assets of the State Bank had resulted in a decrease from the original amount of $244,889.99, to approximately fifty or sixty thousand dollars, within a period of less than two years, it would not be necessary to renew the note for the three-year period, but that if certain details with regard to three tracts of land were satisfactorily arranged, he (the receiver) would be willing to renew the note, for the balance due, for a period of six months. This proposition was not satisfactory to the defendants, and on April 19, 1932, the receiver of the National Bank notified the State Bank that its note in the sum of $54,-191.58 matured on April 25, following, and advised that as the National Bank was in the hands of the federal banking department for liquidation it was necessary that all notes be paid as they matured. The State Bank failed to comply with this demand, and the receiver of the National Bank filed a notice of motion for judgment in the District Court of the United States against the State Bank for the sum of $60,947.14, the balance claimed to be due on the original note, with interest and 10 per cent. attorneys' fees. The defendants had knowledge of this action, but acting under advice of counsel they made no appearance on behalf of the State Bank, and on October 21, 1932,

a judgment was rendered in favor of the receiver of the National Bank for $61,029.28. In December, 1932, the receiver notified the defendants that he would sell the remaining assets of the State Bank at auction or, if they preferred, would transfer to them the assets if they would pay the judgment on the note. The defendants refused this offer. The unrealized assets of the State Bank were advertised for sale at public auction, and were sold on April 14, 1933, at which sale they, with the exception of a few parcels of real estate, were bought in by the receiver of the National Bank for the total sum of $9,665. This sum together with certain collections made by the receiver of the National Bank, less expenses, was credited upon the note, leaving a balance claimed to be due of $51,254.09, with interest from October 21, 1932. Demand was made upon the defendants for the payment of the penalty of the bond, which demand was refused, and this action brought.

There are a number of assignments of error, but only three main questions are raised on appeal: (1) Did the bond become effective? (2) Was the obligation of the bond avoided by the closing of the National Bank and the refusal of the receiver to renew the note, in question, for a period of three years? (3) If the bond did become effective, and its obligation was not invalidated, what are the liabilities of the defendants under it?

As to the first question, whether the bond ever went into effect, it is urged on behalf of the defendants that the bond never became effective because it was understood and agreed that the capital stock of the National Bank was to be increased from $25,000 to $50,000 (which was not done) in order to enable the National Bank to handle the increase in its business brought about by the handling of the affairs of both banks, and further that it was a condition that the liquidation must be conducted by the National Bank in active operation. It is admitted that these conditions were not stated in the bond, but it is urged, and evidence was offered tending to prove the fact, that the bond was delivered upon these conditions. The evidence offered as to this was rejected by the trial judge and we think properly so. This evidence might have been admissible were it not for the admitted fact that to the knowledge of the parties, all the defendants included, the National Bank proceeded to liquidate the State Bank without increasing its capital stock and the liquidation was carried on by the receivers of the National Bank after that bank closed its doors. Under these circumstances there was undoubtedly a waiver on the part of the defendants as to this condition, even could it have been shown to exist, and the defendants, after allowing the liquidation to proceed as it did, are estopped, at the late date at which they did so, from raising this point. "He who stands silent when he should speak may not speak when he should stand silent."

"A condition subsequent is one which, if performed or violated, as the case may be, defeats the contract. Provisions for forfeiture are not favored, and conditions subsequent, when relied on to work a forfeiture, must be created by express terms or by clear implication, and are to be strictly construed, not being aided by implications." 13 C. J. p. 565, § 533.

See, also, 22 C. J. pp. 1149–1151; Burns, etc., Lumber Company v. Doyle, 71 Conn. 742, 43 A. 483, 71 Am. St. Rep. 235; Continental Trust Company v. Witt, 139 Va. 458, 124 S. E. 265.

On behalf of the defendants the case of Whitaker & Fowle v. Lane et al., 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, is relied upon, but we find that that case dealt with an entirely different state of facts. A number of other cases are cited* but an examination of these cases shows that they are not in point.

That all the parties, at the time of the making of the contract, expected that the liquidation would be carried on and completed by the National Bank as a going concern, is not to be doubted; yet it is hard to see how the placing of the National Bank in the hands of a receiver had any damaging effect upon the liquidation of the State Bank which was proceeded with by the receiver, who was duly appointed in pur-

---

* J. J. Lewis & Sons v. Ladson Lumber Company (C. C. A.) 2 F.(2d) 50; Ware v. Allen, 128 U. S. 590, 9 S. Ct. 174, 32 L. Ed. 563; Weicker v. Bromfield (C. C. A.) 34 F.(2d) 377; Bank of Hamilton v. Klock, 73 Hun, 304, 26 N. Y. S. 259; Reliance Life Insurance Company v. Gulley's Adm'x, 134 Va. 168, 114 S. E. 551; Clark v. Miller, 148 Va. 83, 138 S. E. 556; Harris v. Sanford, 148 Va. 181, 138 S. E. 465, 54 A. L. R. 699; Powers v. Maryland Casualty Company (D. C.) 25 F.(2d) 890.

suance with the national banking laws, and had all the powers that the bank would have had. In any event this condition was a subsequent one and the authorities are clear that a condition subsequent, to be effective, must be set out in the written instrument itself. Here we have a transaction carried out under an agreement admittedly complete and in operation; a vital feature of the agreement was the giving of the bond; the execution and delivery of the bond at the time the agreement itself was delivered is admitted; the National Bank would evidently not have entered into the transaction except for the reliance placed upon the bond; and there is no allegation of bad faith on the part of the National Bank or its receivers. Under all these circumstances we are of the opinion that the bond did become effective and that the defendants became liable thereon.

■■ It is strongly urged that the refusal of the receiver to renew the note for the period of three years mentioned in the contract constituted a breach of contract, and a material departure therefrom, which discharged the defendants of any obligations under the bond. We do not think that this position is a sound one. At the time the National Bank went into the hands of a receiver, the liquidation of the State Bank had been going on for nearly two years under the supervision of the defendants, and the results obtained had evidently been very satisfactory. Only fifty or sixty thousand dollars of the liabilities of the State Bank remained unpaid at the time the receiver refused to renew the note for the three-year period. Setting out this fact in his letter to the State Bank, the receiver offered to renew the note for a period which, in his opinion, was sufficient to complete the liquidation. This offer, which was certainly a reasonable one, the defendants rejected and the receiver sued upon the balance due on the note. Then was the time that the defense, sought to be raised here, should have been interposed. Notwithstanding the fact that defendants had notice of this suit, no defense was made. All questions with respect to the note and the balance due on it became, as far as the defendants are concerned, res judicata upon the judgment becoming final. The defendants were the real parties at interest in the suit against the State Bank. Not only were they, in reality, the bank, having charge of all its affairs, controlling every detail of the liquidation, but they were also, under the obligation of the bond, at the very least, indemnitors whose liability was contingent on the liability of the State Bank.

In the contract between the banks it was agreed, with respect to the note, that the National Bank should extend to the State Bank "the privilege of renewal, or renewals, not to exceed three years." It follows that there was no breach of the agreement on the part of the receiver of the National Bank in limiting the first renewal to a period of six months. Nor was it indicated that other renewals would be refused, should it be found necessary, at the expiration of the six months, to still carry on the liquidation of the State Bank. As we have said, the action of the receiver with respect to the renewal of the note was reasonable and justified by the circumstances.

■ It is the settled rule in the federal courts that a judgment against the principal cannot be attacked collaterally by an indemnitor. American Surety Company of New York v. Babb, Receiver, 74 F.(2d) 542 (decided by this court January 8, 1935), and cases there cited.

See, also, Moses v. United States, 166 U. S. 571, 17 S. Ct. 682, 41 L. Ed. 1119; City of Lowell v. Parker, 10 Metc. (Mass.) 309, 43 Am. Dec. 436.

■ We cannot agree with the contention made on behalf of the defendants that the appointment of a receiver for the National Bank put an end to the liquidation agreement. This contention is based on the ground that it is a necessary implication of the contract that the liquidation could only be carried on by the National Bank in active operation. Such an implication does not follow a proper construction of the contract. The bond, executed before the contract and a part of it, in express terms refers to the National Bank, "its successors or assigns," and the note given pursuant to the contract also refers to the National Bank, "or assigns." The closing of the National Bank was involuntary, was done under lawful authority, and the receiver properly proceeded with the liquidation.

A situation similar to the one here was discussed in an opinion by Judge (now Mr. Justice) Cardozo in Assets Realization Co. v. Roth, 226 N. Y. 370, 123 N. E. 743, and the questions there settled are conclusive on this and other questions raised here.

See, also, Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L.

Ed. 1206; National Transit Co. v. Davis (C. C. A.) 6 F.(2d) 729.

■ It is contended that there were irregularities connected with the sale of the remaining collateral, by the receiver after the judgment, but an examination of the record shows that the power of sale was expressly given in the note; that the sale was regular and legal; that the defendants had knowledge of the proposed sale; and that no rights of the State Bank or of the defendants were violated in making the sale. It is further contended that it was unlawful for the receiver to purchase the remaining assets at the sale, but, again, we find that this right was expressly given, in the note, and we know of no exception to the rule that a receiver, in his official capacity as such, may purchase, for the estate in his charge, property lawfully sold by him where there is no proof of fraud. 53 C. J. 210, § 332, and cases cited in note 11.

We are of the opinion that the defendants were not relieved of their obligation under the bond by the closing of the National Bank or the refusal of its receiver to renew the note as demanded by the State Bank.

■ Having reached the conclusion that the bond became effective and that the obligation of the defendants under it was in no way relieved or invalidated, we come to the final question as to what were the liabilities of the defendants under it. In the bond itself the words "debts" and "charges" are used. The ordinary meaning of these words would lead to the inference that the obligation of the bond constituted the defendants as indemnitors against not only damages suffered but liabilities incurred. When the bond is interpreted not only in the light of the common and ordinary meaning of the words used, but also in the light of the circumstances surrounding the giving of the bond, we are forced to the conclusion that the condition of the bond was one guaranteeing against both loss and liability.

"Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover." 31 C. J. 438, § 33.

"Where the contract is not a mere contract to indemnify and save harmless, but a contract to save from a legal liability or claim, the legal liability incurred and not the actual damage sustained is the measure of damage." 31 C. J. 435, § 28.

This statement of the principle of law above set out is supported by a number of decisions. Oriental Lumber Company v. Blades Lumber Company, 103 Va. 730, 50 S. E. 270; Carman v. Noble, 9 Pa. 366; Smith v. Chicago, etc., Railway Company, 18 Wis. 17; Gilbert v. Wiman, 1 N. Y. 550, 49 Am. Dec. 359; Eva v. Andersen, 166 Cal. 420, 137 P. 16; Merchants' & Manufacturers' Nat. Bank v. Cumings, 149 N. Y. 360, 44 N. E. 173.

An examination of the authorities relied upon on this question by the attorneys for the defendants shows that they are not controlling.

That the National Bank became liable for all the debts of the State Bank and was never reimbursed, to the extent of the judgment, is admitted. In this connection it is strongly contended on behalf of the plaintiff that the assumption of the liabilities of the State Bank by the National Bank, taken together with the acceptance by the creditors of the State Bank of the National Bank as their paymaster, constituted a novation. The evidence shows that under the rule of "first in, first out," all of the individual checking accounts in the State Bank were paid by the National Bank and practically all the certificates of deposits and savings deposit books of the State Bank were surrendered by the depositors and certificates of deposits and savings books of the National Bank were accepted in lieu thereof. This would seem to have completed the novation, as all the elements laid down by the authorities as necessary, to wit, the concurrent assent and intent of the three parties, namely, the original debtors, the creditors, and the substituted debtor, were present. However, in view of our conclusion that the obligation of the bond indemnified against liability, it is not necessary to decide this point.

The receiver was a disinterested party and, from the evidence, performed faithfully his duty to the bank of which he was receiver, to the State Bank in liquidating its affairs, and to the defendants themselves. No proof is shown in the record of any dereliction of duty on the part of the receiver, who acted fairly to all concerned; the defendants entered into the obligation imposed by the bond for the purposes of protecting depositors in a bank of which they were officials, depositors in all probability led to place their money in the State Bank by

their faith in the defendants; the defendants do not appear to have supported the receiver in his efforts in the liquidation of the State Bank as they should; and the moral as well as the legal obligation rests upon the defendants and each of them to discharge in full the obligation they took upon themselves when they signed the bond.

There was no error in the trial below, and the judgment is accordingly affirmed.