SOUTH BEND STATE BANK *v.* DEPARTMENT OF
FINANCIAL INSTITUTIONS ET AL.

[No. 26,940. Filed December 21, 1937. Rehearing
denied March 1, 1938.]

*Walter R. Arnold,* for appellants.

*Roland Obenchain, Seebirt, Oare, Deahl & Omacht, G. A. Farabaugh,* and *Albert Frantz,* for appellees.

TREMAIN, J.—This is an appeal from a judgment rendered by the Marshall Circuit Court. The basis of the controversy is a written agreement entered into by the South Bend State Bank, first party, and the First National Bank and the Union Trust Company, second parties, all of South Bend, Indiana.

The agreement was executed on the 31st day of January, 1931, and in substance recited that because of subnormal financial conditions the first party had suffered loss, and was unable to continue a banking business, although it was at that time solvent; that two-thirds of the owners of its capital stock had executed their written consent to a voluntary liquidation of the bank, and had authorized the directors to sell and dispose of the assets of the bank upon the best terms ob-

tainable; that the directors of the bank adopted a similar resolution resolving to sell and dispose of all assets, other than real estate, "in order to effect such liquidation"; that pursuant to such resolutions the South Bend State Bank sold, assigned, and transferred to the First National Bank and Union Trust Company all of the assets of the first party, each item of which is named in the contract; that in consideration of such sale and transfer, the second parties severally assumed and agreed to pay all debts and obligations of first party; that each of the second parties should be liable only for such obligations of the first party as pertained to the various assets taken over by it, and were not to be jointly liable for any obligation unless it be discovered that any obligation of the first party did not pertain specifically to any particular assets taken over by either of the second parties, then they should become jointly liable therefor; that this sale and transfer was made "to the end that the affairs of first party may be fully liquidated," and the assets thereof realized on and converted into cash, and its debts, liabilities, and obligations fully paid and discharged; that the commercial deposits, commercial and collateral loans and notes should be taken over by the First National Bank; that the savings accounts, mortgages, and mortgage notes should be taken over by the Union Trust Company, "and the depositors of first party, savings and commercial respectively, shall be given pass books and other evidences of account in each of second parties, so that the position, rights and standing of the depositors of first party will be the same after the execution of this agreement as that of the present depositors respectively of second parties. All other assets of first party, other than those above mentioned in this paragraph, shall be taken over by either or both of second parties as they respectively shall determine"; that "the purpose of this

agreement is to liquidate the affairs of first party, . . . as speedily as possible, consistent with good business management, . . . and sell the bonds, securities and other assets (exclusive of real estate), formerly the property of first party as and when, and for such price, as in the judgment of the officers of second parties such securities and assets should be sold, in order that further loss may be prevented in the liquidation thereof." The officers of second parties were given the right to renew notes and mortgages, extend the time for the payment thereof, rent the real estate, pay improvement expenses, insurance, and taxes.

The contract further stipulated that "It is not contemplated that second parties should sustain any loss whatsoever in the taking over of the assets of first party and the assumption of its liabilities." It recited that as a further assurance that second parties should suffer no loss on "account of the carrying out and fulfillment of the terms and provisions of this contract," first party should convey to the Union Trust Company, as trustee, all of its real estate including its banking house and items carried upon the books of first party as "other real estate"; that "Said trustee shall hold, manage and administer all of said property so trusteed with it for the benefit primarily of second parties hereto, and secondarily for the benefit of first party for such period of time as may be necessary, not in excess of Three (3) years however, for the complete liquidation of the affairs of first party"; that the trustee was authorized to sell and dispose of all or any parcel of the property so trusteed, "it being contemplated, however, that in all sales the board of directors of first party shall be consulted and, if they object to the proposed sale of the premises, shall have the right to equal any bona fide offer which may be obtained by said trustee . . ." It provided that when it should be determined that the

second parties would suffer no loss on account of the liquidation of first party, they should return to first party, and duly account for all assets remaining in their possession; that as a further guarantee that second parties should suffer no loss, the statutory liability of stockholders was expressly preserved; that in taking over the assets of first party it was agreed that first party's cashier, assistant cashier, and a bookkeeper should become employees of second parties and assist in the liquidation. It was agreed that in the disposition of any securities or assets of first party for less than the face value, "second parties will notify some officer, to be designated by first party, of such intention to dispose thereof, advising the price and terms . . . ."

Pursuant to the foregoing contract, the assets of the first party were delivered to second parties and divided between them by persons selected to make the division. Thereafter, and prior to April 16, 1931, the First National Bank was examined by the comptroller of currency, and it was discovered that it held certain mortgage notes contrary to the provisions of the federal banking laws, and it was ordered to dispose of the same at once. The mortgage notes objected to by the comptroller of currency were notes which had been taken over pursuant to the agreement with the first party. Under the terms of the contract such notes should have gone to the Union Trust Company in the first instance. Therefore, on April 16, 1931, the First National Bank delivered said mortgage notes and bonds to the Union Trust Company at their face value, to wit: $32,548.66, which sum was paid by the Union Trust Company from cash derived from the South Bend State Bank. Apparently that sum was paid in order to keep the statement of assets and liabilities of the South Bend State Bank in balance as between the First National Bank and the Union Trust Company.

Many other transactions were had by the second parties between the 31st day of January, 1931, and the 5th day of June, 1931, when the First National Bank and the Union Trust Company found themselves in financial distress and in a position where it was necessary to close their doors. The assets of the Union Trust Company were turned over to the State Bank Commissioner, while the First National Bank turned its assets over to, or consolidated with, the Indiana Trust Company, which name was at that time changed to First Bank and Trust Company. The State Bank Commissioner and the First Bank and Trust Company continued the liquidation of the affairs of the first party pursuant to the contract of January 31, 1931. Payments had been made on some mortgage bonds taken over by the Union Trust Company during that period. Other mortgage bonds had been delivered to receivers of the companies issuing them, pursuant to stockholders' agreements. The accounts of the depositors of the first party had been transferred to and carried upon the books of the second parties, and pass books had been issued to them. However, a few of its depositors did not turn in their pass books.

On October 31, 1931, the appellant filed its action in Saint Joseph Superior Court, No. 1, against the Union Trust Company, the trustee, First National Bank, and First Bank and Trust Company, praying for a declaratory judgment, injunction, and accounting. The defendants appeared, and the cause was venued to the LaPorte Circuit Court, where it remained until June 22, 1935, when the parties entered into a long stipulation of facts, the substance of which was that the department of financial institutions had taken over and was engaged in liquidating the assets of the Union Trust Company, including the trusteed assets of South Bend State Bank, under the jurisdiction of Saint Joseph

Superior Court, No. 1, and had filed in that court on January 30, 1934, the department's petition No. 45, to which petition all other parties were made defendants. The stipulation contained a full and detailed statement of transactions had in the process of liquidation, too extensive to be recited herein. It was stipulated that the appellant's action, pending in the LaPorte Circuit Court, and the department's petition No. 45, pending in Saint Joseph Superior Court, No. 1, should be venued to the Marshall Circuit Court and consolidated for all purposes. The findings disclose that the causes were so venued and consolidated. After the department filed its petition No. 45 the plaintiff dismissed its complaint. The parties agreed that all issues were to be heard and presented without further pleadings.

Petition No. 45 asked for declarations, decrees, and orders of the court concerning the administration of first party's assets, and presented substantially all questions embraced in appellant's complaint.

Afterwards, on October 15, 1935, the cause was submitted to the Marshall Circuit Court for trial upon the agreed statement of facts. Each party asked the court to make special findings and to state its conclusions of law thereon. This was done. The findings and conclusions were unfavorable to appellant. It excepted to each of the seventeen conclusions. The department of financial institutions excepted to conclusion No. 15. Certain depositors of South Bend State Bank excepted to conclusion No. 13. Judgment was rendered and the appellant prosecuted this appeal.

Many questions are discussed in the briefs of appellant and appellees—mostly questions of fact fully covered by the special findings. It appears that only one or two vital questions are presented. The appellant's attorney, in oral argument, stated that every phase of the liability of the First National Bank and First Bank and Trust

Company depends upon the construction of the contract of January 31, 1931.

The first proposition asserted by appellant is that the three-year provision in the contract, as quoted above, limited the second party to that time in which to liquidate the affairs of the first party; that the contract was one of outright sale. Also, it is contended that when the First National Bank closed its doors and its banking business was consolidated with the Indiana Trust Company under the name of First Bank and Trust Company, such transaction constituted a sale; that the original contract did not guarantee to save the second parties harmless from loss after the expiration of the three-year period; that, as found by the special findings, various assets of the first party had depreciated in value. Therefore, the appellant says it should be reimbursed by appellees for such losses; that the appellees should return to the first party the assets assigned to them, or pay to appellant the value as shown by appellant's books at the time of the sale and assignment. Demand for the return or payment was made after January 31, 1934.

Appellant contends that when the mortgage bonds were delivered to the Union Trust Company in April, 1931, and $32,548.66 paid by it to the First National Bank, such transaction amounted to a sale for that amount, and the appellees should account to the appellant for the difference between $32,548.66 and $12,000, the value at that time as found by the court. The trial court held that this transaction did not constitute a sale. Also, it was found that when the First National Bank closed its doors June 5, 1931, and turned its assets over to the First Bank and Trust Company under a similar agreement to that of January 31, such sale and transfer did not operate as a sale as contemplated by the contract of January 31, 1931.

The findings of the court disclose that during the

period in which the liquidation of the appellant's assets was being administered, a general financial depression existed throughout the country and especially in the city of South Bend, Indiana, and the value of all of the assets greatly depreciated; that the financial condition was not contemplated by the parties at the time of making the original contract; that it was expected that appellant's assets would fully pay all its liabilities, also, that the appellee banks would continue to operate as solvent banks. The court found that it was the primary purpose and intention of the parties to fully complete the liquidation of the appellant bank; that the contract must be read as a whole.

Looking at the contract as a whole, and considering the representation that the appellant was solvent; that it sought to avoid involuntary liquidation; that it desired that its creditors and depositors should be paid immediately; that the appellees agreed to make such immediate payments; that the cashier, assistant cashier, and bookkeeper of the appellant were employed by the appellees to assist in the liquidation, and the many other conditions surrounding the banking situation in South Bend at that time, leads to the inevitable conclusion that the contract did not contemplate an outright sale in the first instance, but was a pledge of the assets for the purposes named. *Hightower* v. *American National Bank* (1923), 263 U. S. 351, 44 S. Ct. 123. The creditors of appellant had an interest in the contract as well as officials and stockholders of appellant. The trust could not be terminated because of the failure of the trustee. The court would appoint another. There is nothing in the record to indicate, in the slightest degree, that any assets were to revest in appellant until all debts were paid. *Clark, Adm'r.* v. *Wilson* (1881), 77 Ind. 176; *Assets Realization Co.* v. *Roth* (1919), 226 N. Y. 370, 123 N. E. 743; *State Planters' Bank & Trust Co.* v. *First National*

*Bank* (1935), 76 F. (2d) 527. It cannot be ascertained what assets, if any, shall be returned to appellant until the liquidation is completed.

The findings of the court, in detail, set out in full the liabilities and assets of appellant, and the transactions of the appellees, including the department of financial institutions, in the liquidation of the appellant's assets. There is no finding that either party to the original contract, at that time, had any knowledge that any of the securities held by first party were of less value than the amount shown upon the books. Finding No. 32 expressly stated that no assessment had been made against the stockholders of the South Bend State Bank, nor that any of them was insolvent.

Under all the circumstances the contract will be construed for the benefit of the second parties, and that the three-year clause, together with the representation that the appellant was solvent, can as readily be construed for the benefit of the appellees as for the benefit of the appellant. Time not being of the essence of the contract, the phrase "not in excess of three years" must yield to the dominate purpose of the contracts. *Clark, Adm'r.* v. *Wilson, supra.* Had appellees not believed that the settlement could be made within that period, it is possible they would not have undertaken it. The court must be guided by the dominate purpose of the contract, and that dominate purpose was to liquidate the assets of the appellant bank as speedily as possible under existing conditions, and in such manner as not to cause loss to appellees. It is a matter of common knowledge that following January 31, 1931, the financial depression increased to such an extent that banks everywhere were compelled to close their doors. In finding No. 7 the court stated that the parties "did not have reason to and did not apprehend or anticipate the magnitude and duration of the financial depression."

Appellant further complains because it was not notified by the appellee banks of certain sales of assets; that the contract provides that the appellant should be notified of any sale in order that it might be permitted to find a more advantageous sale. There is no showing upon the part of the appellant, nor any finding by the court that the appellant was harmed by such transactions; nor is there any showing that the appellant designated any person or officer upon whom notice should be served. Furthermore, the contract provides, and the court found, that the cashier and certain employees of the appellant should be and were employed by the appellee banks to assist in the administration of the trust. There is no showing that these officers and employees were not fully aware of all transactions.

It is the judgment of the court that the appellant is not entitled to a reversal of this cause upon the questions hereinbefore discussed. Other subordinate and collateral questions based upon the appellant's construction of the terms of the contract of January 31st are presented and discussed. Under the holding of this court upon the principal questions, these subordinate questions become unimportant and of no controlling influence, not being supported by the findings and conclusions of the court. What has been said heretofore disposes of these questions.

Certain trust depositors of the appellant, who did not abide by the terms of the contract of January 31st, and who are made appellees in this appeal, have undertaken to question conclusion No. 13. There is no specific statute authorizing the assignment of cross-errors, but the rules of court provide that the appellee may, as of right, without notice, assign cross-errors within sixty days after submission. If cross-errors are assigned thereafter, notice must be served as in case of a vacation appeal, §2-3206 Burns Ind. St. 1933, §482 Bald-

win's Ind. St. 1934. The cross-errors were not filed within the time allowed for a term time appeal. Notice was not given. A co-appellee has filed a motion to reject the assignment of cross-errors because of the lack of notice and upon other grounds. A failure to give the notice in a vacation appeal is sufficient ground to strike out the cross-errors. The motion is therefore sustained.

The department of financial institutions excepted to conclusion No. 15 for the reason that it and the creditors of the Union Trust Company were denied recourse against the First National Bank and First Bank and Trust Company for damages sustained April 16, 1931, when the Union Trust Company transferred $32,548.66, cash belonging to appellant, to First National Bank. Conclusion No. 15 is as follows:

"That on January 31, 1931, the Union Trust Company, pursuant to the agreement recited in Finding of Fact No. 6, became the owner of the bonds described in Finding of Fact No. 2 as Group 1 of Item 6 of the resources of said South Bend State Bank; that on January 31, 1931, said bonds were erroneously delivered to the First National Bank without the knowledge of said South Bend State Bank; that on April 16, 1931, said bonds were delivered by the First National Bank to the Union Trust Company and the Union Trust Company at the same time transferred to the First National Bank $32,548.66 of the cash received by it from the South Bend State Bank as recited in Finding of Fact No. 10; that the rights and liabilities of each of the parties to said agreement of January 31, 1931, were, on and after said transfers of April 16, 1931, the same as if the bonds herein described had been originally delivered to the Union Trust Company on January 31, 1931, and $32,548.66 of the cash of the South Bend State Bank which was on January 31, 1931, delivered to said Union Trust Company had on said date been delivered originally to said First National Bank."

The position of the department in its brief against appellant was that the transaction was honest and such

as was contemplated by the contract; that the mortgage bonds should have gone to the Union Trust Company in the first instance. This court considered that transaction in the discussion of the question as between appellant and the department. The record does not disclose any element of fraud in connection with the transfer. The findings support the conclusion. The contract is clear and unambiguous. There is no reason for a declaratory judgment. Whether the department or the creditors of the Union Trust Company suffer any loss will not be known until the assets are fully liquidated. The findings disclose that certain payments had been made on some of the bonds transferred April 16, 1931, none of which was tendered back to the First National Bank. No attempt has been made to place the First National Bank in *status quo*. The court did not err in conclusion No. 15.

Finding no error in the record the judgment of the trial court is affirmed.