**WHEELER v. MARCELLE, Collector of Internal Revenue.**

Civ. A. No. 10273.

United States District Court
E. D. New York.

June 16, 1950.

Bleakley, Platt, Gilchrist & Walker, New York City (Horace N. Taylor, George Levitus, George Q. Slocum and Bouvier Beale, all of New York City, of counsel), for plaintiff.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y. (Nathan Borock, Assistant U. S. Attorney, Brooklyn, N. Y., of counsel), for defendant.

BYERS, District Judge.

These are cross motions for summary judgment in a cause containing no contested issues of fact.

The action is to recover an alleged overpayment of personal income taxes for the years 1942 and 1943 of $11695.33 with interest, and is based upon the disallowance as a deduction for a bad debt of $21142.93 principal and $7157.07 interest, which together amount to $28300.00.

That sum was paid by the taxpayer to the Trustees under the Will of Frederick S. Wheeler, deceased, during the calendar year 1942, and represented approximately one-half of the balance of principal and unpaid interest due on a note for $50,000.00 bearing 4% interest, dated December 14, 1934, made by Henry W. Phelps, to the order of the decedent. That note was owned by the latter at the time of his death during April of 1936, and thus came into the possession of his executors.

It is assumed for present purposes that the note could have been collected by the executors; they did in fact receive payments on account of principal amounting to $8500.00 between June 19, 1936, and August 12, 1937, but nothing more. In the Federal Estate Tax proceedings the note was listed at face value, and so assessed in the computation of the tax.

For personal reasons the widow and son of the decedent (who with Bankers Trust Company were executors of and trustees under the Wheeler Will) were reluctant to enforce the collection of the Phelps note by legal means; thus their official duties, and two-thirds of their personal inclinations were reconciled by the arrangement which forms the basis of this claim.

By written agreement, dated January 7, 1938, between the executors and trustees of the one part, and Mrs. Wheeler and her son Arthur of the other, it was recited that they had requested the former "not to demand or enforce payment against the maker (Phelps) of either principal or interest of said note at the present time and are willing to make this Agreement to hold the said parties of the first part harmless by reason of the failure to collect against the maker the balance of principal or interest now due or to become due".

To carry out this declared purpose, the executors agreed to distribute the said note in kind to themselves as Trustees of the testamentary trust for Mrs. Wheeler, and that they would not enforce payment of the note as such Trustees except upon the written consent of Mrs. Wheeler and her son. Wherefore the latter agreed: (a) to waive interest occasioned by the failure to collect interest or principal of the Phelps note; (b) that Arthur would accept the note at face value pursuant to the terms of the trust for his mother if he should survive her; (c) that if she should survive him the note should be purchased jointly (by her and his representatives) from the executors and trustees; and (d) that the individuals, jointly and severally, for themselves, etc., "in the event that at any time any court of competent jurisdiction enters any final order surcharging the account of the parties of the first part as Executors and/or Trustees * * * with any amount by reason of the failure to collect the principal or any interest thereon upon the note of said H. W. Phelps * * * then and in such event they will promptly pay over forthwith to the said parties of the first part * * * the full amount of any such surcharge together with any interest or costs thereon so as to hold at all times the said parties of the first part or their survivors or successors harmless and free from any and all liability or loss or damage by reason of any such surcharge".

It is in respect of the taxpayer's performance of the contractual duty so arising, that this suit arises.

It will be observed that the last payment on account of the note (August 12, 1937) rendered the statute of limitations applicable six years later.

Suit was instituted by the Trustees under the Wheeler Will, against Phelps, in the Supreme Court of New York, in July of 1942, upon the unpaid balance of $41500.00 and accrued interest, but seemingly it did not go to judgment. An examination of the defendant elicited the information that he was without assets from which a judgment could have been satisfied, and in the opinion of counsel the note at that time was worthless, and "to take judgment thereon would be at best a

futile gesture and would cost the Trustees substantial expense, all to no avail".

Believing that execution on such a judgment would be returned unsatisfied, the parties plaintiff abandoned the case.

Thereupon (December 24, 1942) the Bankers Trust Company wrote to Mrs. Wheeler and her son, in part: "We are convinced that upon any accounting the trustees will be surcharged with the amount of this note, and, therefore, that the agreement between the trustees and yourselves dated January 7, 1938 should be enforced against you as guarantors."

Demand for reimbursement of the trust estate was made to the extent of $55,545.00 of which $41,500.00 was the principal unpaid "and $14,045 interest computed to December 28, 1942".

With obvious alacrity Mrs. Wheeler made the payment of $28,300.00 on that day, being the amount referred to in the opening paragraph hereof.

Thus at the date of payment there had been no surcharge whatever, and even if one would have been appropriate as to principal, I should suppose that the item of interest would have depended upon a finding by the court in which the account would be settled, as to the earliest date when the accountants could have made actual collection of the note. That is largely a matter of inference upon this record, although it does appear that Phelps received $150,000.00 during 1938 as Chairman of the Board of the American Can Company. What his commitments were in addition to this note, do not appear, nor his income tax liability for 1938. (It does appear that he was indebted for federal income taxes in the sums of $17,343.69 for 1941, and $80,823.04 for 1942.)

In other words, I should suppose also that the propriety of a surcharge would have depended upon a showing of the true financial condition of Phelps during 1937 when he was making payments on account of the note.

While Mrs. Wheeler seems to have been satisfied with the opinion expressed for the Bankers Trust Company on this subject (Exhibit P), it does not follow necessarily that the defendant or the United States are thereby concluded.

The executors accounted and their accounts were settled by Surrogate's decree of December 14, 1938. There was no surcharge.

The question for decision is whether there was a debt owing to Mrs. Wheeler as at December 28, 1942, as the result of the said payment by her, which was bad, and therefore deductible in fixing her income tax status; i. e., was there such a debt owing to her during 1942 by Phelps?

The answer seems to turn upon the narrow issue of whether she was a guarantor of the Phelps note and thereby a successor in title to the Trustees; cr merely an indemnitor of the Trustees against a possible surcharge against them individually, who had performed her undertaking to indemnify in anticipation of a situation which never arose in fact. The distinction is important.

Howell v. Commissioner of Internal Revenue, 8 Cir., 69 F.2d 447, certiorari denied, 292 U.S. 654, 54 S.Ct. 864, 78 L.Ed. 1503, clearly adjudicates the non-deductibility of an asserted bad debt arising from the performance of an agreement to indemnify. The following excerpt from the opinion 69 F.2d at page 451 fits the present situation closely: "Although the ordinary surety or guarantor is a creditor of the principal debtor, the same cannot be true of an indemnitor who does not undertake to assume or discharge the obligations of another, but has, *on his own account* (italics supplied), contracted to pay a sum of money upon the occurrence of a certain event, usually the happening or the ascertainment of a loss. There is no privity, either actual or implied, between the promisor in the undertaking the loss from the nonperformance of which is indemnified against and the indemnitor, and the latter, if the loss occurs, does not, by payment of it, discharge any one's obligation but his own."

Here Mrs. Wheeler did not wish to have Phelps pressed for payment during the year following her husband's death, for reasons touching her own stock interests

in the American Can Company, as well as the status of her son as a director. It was therefore on her own account, within the quotation, that she gave the undertaking now relied upon.

The plaintiff's tacit concession of the law as expounded in the Howell case, is responsible for the argument that the agreement of January 7, 1938, quoted from above, is consistent with the existence of a guaranty, in spite of the terms of the agreement itself.

Stated shortly, it is that the agreement omits to state the true nature of the undertaking by the Wheelers concerning what would happen during the continuance of their joint lives with respect to the Phelps note, namely, that they guaranteed its payment. It is argued that proof of that missing obligation is to be gathered from, (a) the affidavit of counsel (in support of the motion) who had charge of the administration of the Wheeler estate, and who originally suggested the means which were adopted to temporize in the matter of collecting the note, and (b) passages occurring in correspondence back and forth between him and Mrs. Wheeler, and with the corporate trustee.

An examination of these papers reveals that the argument is labored at best. In the first place, no reason is suggested for the failure to incorporate in the written agreement a guarantee of the note or of its payment. Such an arrangement is plainly forecast in the letter of December 23, 1937, which antedated the actual contract by about two weeks. The omission could have been deliberate.

It is urged that the conduct of the parties, other than Phelps, showed that they understood their liability to be that of guarantors, in that (1) they were careful to sue within the period of limitation, (2) Mrs. Wheeler wrote (May 2, 1940) to Phelps, stating the necessary method to protect the estate against charges of improper handling "is that Arthur and I should personally make good the amount of the note still due, thus almost doubling the sum which your note cost us." (The closing phrase is not presently understood.)

(3) That the corporate trustee's letters (Exhibits J and K) are consistent with an understanding by it that a guaranty was extant (though not in visible form). In this connection, plaintiff finds it necessary to attribute to the corporate trustee a failure to correctly visualize the situation in employing language already quoted (Exhibit P, December 24, 1942) in a letter to Mrs. Wheeler and her son: " * * * We are convinced that upon any accounting the trustees will be surcharged with the amount of this note, and, therefore, that the agreement between the trustees and yourselves dated January 7, 1938 should be enforced against you as guarantors." The error ascribed to the corporate trustee being its failure to understand that the liability now asserted by the plaintiff existed separate and apart from the agreement, and not as an element thereof.

It is necessary to complete the argument to assert that the corporate trustee manifestly could not demand the payment that was made on December 28, 1942, since no surcharge then existed. But Mrs. Wheeler did not resist the demand for that or any other reason. On the contrary she complied with it in express terms (Exhibit Q— her letter to corporate trustee).

(4) The note was transferred to the Wheelers on December 30, 1942, which is compatible only with an agreement of guarantee, not indemnity.

■ The foregoing have been recited to indicate that plaintiff's argument has been considered in detail, but is found to be unpersuasive to support the existence of an engagement of guaranty as a thing apart from the agreement of indemnity.

It has been assumed that the authorities cited by plaintiff justify examination of the evidence tendered to establish that which does not appear in the written agreement, in spite of its parol nature, in the interest of justice as asserted by the taxpayer. The process, however, is without affirmative result.

The entire transaction from beginning to end was studied and meticulous. The contract was not the casual creation of a hurried moment, and the only affirmative ele-

ment in the plaintiff's case is the delivery of the Phelps note to herself and her son. Standing thus alone, it does not suffice to overcome the persuasive aspect of the omission from the contract of any expression of guaranty.

If it had been intended to create on January 7, 1938, an existing guaranty of the Phelps note, upon discharge of which the guarantors would have automatically become the creditors in their individual capacities of Phelps, it would have been a simple task to cast the bond in appropriate terms.

It results that the plaintiff has failed to establish the bad debt alleged in her complaint; defendant's motion for judgment is granted, and plaintiff's motion is denied.

Settle order and judgment.