**In re MID–ATLANTIC FUELS, INC., Debtor.**

**Bankruptcy No. 88–20968.**

United States Bankruptcy Court, S.D. West Virginia.

Nov. 1, 1990.

208

John Rollins, Lewis Ciccarello & Friedberg, Charleston, W.Va., for the trustee, Dann Salamie.

Raymond G. Dodson and Charlotte R. Lane, Dodson, Riccardi & Lutz, Charleston, W.Va., for Quaker State Corp.

MEMORANDUM ORDER GRANTING TRUSTEE'S MOTION FOR RELIEF FROM ORDER PROVIDING ADEQUATE PROTECTION PAYMENTS; GRANTING TRUSTEE'S MOTION TO STAY JUDGMENT; AND DENYING QUAKER STATE'S MOTION FOR STAY RELIEF

RONALD G. PEARSON, Bankruptcy Judge.

The Trustee in this case is administering the property of the Debtor, Mid–Atlantic

Fuels, Inc. [Mid–Atlantic], subject to various orders and agreements, including a lease/purchase agreement with Phoenix Refining Company [Phoenix].[1]

Quaker State Corporation [Quaker State] operated a refinery at the site near St. Mary's, West Virginia for more than 50 years. On December 30, 1987, Quaker State sold the plant to Mid–Atlantic which operated the refinery from January to December, 1988. Mid–Atlantic filed a petition for Chapter 11 relief under the Bankruptcy Code December 19, 1988. In attempting to form a plan for reorganization, Mid–Atlantic signed a lease/purchase agreement with Phoenix July 28, 1989.

Environmental testing reports allegedly made available to Mid–Atlantic before the 1987 sale revealed some soil contamination in several locations at the site and the presence of toluene, xylene, lead and petroleum hydrocarbons in groundwater contacted during a soil sampling at the facility's waste water treatment plant, at a depth below the groundwater table. Environmental assessment done after the December 30, 1987 sale by Quaker State to Mid–Atlantic revealed widespread contamination of the soil and contamination of ground water in the area of the refinery. The Trustee asks to be relieved of his obligation to pay adequate protection payments of $50,000 quarterly to Quaker State, in order to use those funds, derived from rent payments made by Phoenix, to provide for assessment and monitoring of pollution risks to the ground water in the vicinity of the refinery, and to meet other costs of administering the estate. Quaker State argues that the Trustee has no duty beyond administering the assets of the estate as he finds them and further argues that the Trustee cannot claim, at this late date, that continued adequate protection payments are inequitable. Quaker State argues that, under the facts and circumstances in this case, the Trustee has no grounds for relief under Rule 60(b)(5) or (b)(6) of the Federal Rules of Civil Procedure, that the motion for relief of the Order granting adequate protection is not timely filed, that extraordinary circumstances or extreme hardship are not involved, and that granting the relief asked by the Trustee would not be appropriate to the furtherance of justice.

On August 28, 1990, the Court took evidence and heard arguments on three interrelated matters. The first is a motion of the Trustee, filed June 8, 1990, for relief from the January 17, 1989 Order which provided for adequate protection payments to Quaker State, and for relief from the August 16, 1989 Order granting to Mid–Atlantic authority to enter into a lease/purchase agreement with Phoenix, to the extent the August 16th Order approved continuation of adequate protection payments to Quaker State. The second is Quaker State's renewed motion for stay relief filed July 9, 1990. The third is the Trustee's motion to stay judgment, filed July 18, 1990.

The Court adopts the proposed findings of facts and conclusions of law filed by the Trustee September 17, 1990, with the fol-

---

**1.** By lease purchase agreement executed July 28, 1989 by the Trustee and Phoenix Refining Company, Phoenix is obligated to pay $25,000 per month to rent the refinery and storage facility. Of the amount owed for rent, $50,000 per quarter is to be paid by Phoenix directly to Quaker State Corporation in accordance with this Court's Order granting adequate protection payments to Quaker. Phoenix may terminate the lease term, following notice, at any time after July 31, 1994 and prior to the purchase date. Page 46 of the agreement provides that at any time ninety days after Phoenix receives all certificates required by section 22.01(c) of the agreement and prior to August 1, 1994, Mid–Atlantic has the right to require Phoenix to purchase the facility on terms and conditions set forth in the agreement. Section 22.01(c) speci-

fies delivery to Phoenix by the Environmental Protection Agency or the Department of Natural Resources, as appropriate, final written determination that all hazardous material has been identified and that all hazardous material to which there has been a release or as to which there is a significant possibility that there will be a release or the threat of a release in the future have been properly treated, removed or contained. The specifications in section 22.-01(c) include, if available, covenants by EPA and the DNR not to sue Phoenix regarding conditions in existence as of the commencement date.

Section 16.03 of the lease/purchase agreement sets the purchase price at $7,250,000 less rent paid by Phoenix.

lowing exceptions. The correct cite in paragraph 8 on page 6 of the Trustee's proposed findings and conclusions is Appendix Item G, Phoenix Tr. p. 69, not page 89. The Court does not agree with the Trustee's representation in Paragraph f. on page 20 of his proposed findings and conclusions that the Quaker State environmental studies do not address ground water problems, but the Court does accept the remainder of that paragraph.

In Article 8 of the Sale Agreement dated December 30, 1987 and executed by the presidents of Quaker State and Mid–Atlantic, Quaker State, seller, promised to indemnify, defend and hold harmless Mid–Atlantic, the buyer, its officers, directors, employees and agents, from and against all claims, causes of action, damages, liabilities and expenses or costs, including attorney fees, which result from or arise out of releases or disposal of pollutants or contaminants generated or produced by the seller at the plant prior to closing and discovered or identified by the seller, the buyer or third parties, including regulatory agencies, after the closing. Paragraph 8.4 of the Sale Agreement provides that the obligation of Quaker State to indemnify, defend and hold harmless Mid–Atlantic, as stated above, shall expire three years after the closing date.

### Adequate Protection

■ While an order providing for adequate protection is a final order in the sense that it may be appealed, it is not a final decision of how a creditor's particular claim will be treated. In that context, it is an interim decision, subject to be altered by the Court for just cause. It is the duty of the Chapter 11 case Trustee to attempt to propose a feasible plan and at the same time protect fairly the interests of all parties involved. Providing cash payments for adequate protection is not an exclusive way the Trustee may properly and fairly treat the claim of a secured creditor prior to the proposal and confirmation of a plan. Establishing treatment of a claim prior to the submission of a plan is no bar to establishing a different treatment of the claim in the plan. Additional discovery, a change in law, or a change in the value of collateral can be the basis of a change in the treatment of a claim prior to the formation of a plan.

In the situation at hand, the Trustee has become aware of conditions at the plant site that give rise to concerns that various chemicals spilled on the soil at the plant may migrate off-site through ground water pathways, presenting a possible threat to the health and welfare of the public, and possibly subjecting both the estate and Quaker State to liability for the release of hazardous substances onto adjoining property.

■ The Trustee's need to further evaluate the property, to act responsibly in administering and preserving assets of the estate, to establish a framework for allocating liability for any out-migration of hazardous substances, and to position himself to be able to propose a reasonable plan, are sufficient reasons for the Court to reexamine the present scheme of administering the estate's assets.

■ The Bankruptcy Code provides in §§ 362, 363 and 364 for the adequate protection of an entity's interest in property of the estate. Pursuant to § 361 of the Code, adequate protection may be provided by cash payment, by an additional or replacement lien, or by granting relief which is the indubitable equivalent of the entity's interest in such property. Because Quaker State is potentially liable under state and federal law for any trespass or injury resulting from out-migration of hazardous substances from the refinery site, and because conditions found at the plant indicate the existence of a substantial threat to ground water quality, the Court finds that reasonable study of the site to further assess any migration of hazardous substances in the ground water in the area of the refinery is adequate protection in the form of an indubitable equivalent of Quaker's interest in the equipment, vehicles and other collateral under the control of the Trustee of the estate.

## Rule 60(b)

Rule 60(b) states in part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On Motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

■ Because of the increasing realization of potential liability of the estate for acts of Quaker State which occurred prior to Mid–Atlantic's purchase of the refinery, and because of the Trustee's need to allocate assets of the estate to further study environmental conditions at the site, this Court's previous ruling on adequate protection for Quaker State is no longer equitable. Considering the potential for overwhelming liability to both the estate and to Quaker State should hazardous substances from the site migrate to cause harm to the public, the potential for irreparable harm to the public should such migration occur un-

detected, and Quaker State's reluctance to accept responsibility for insuring that such harm does not occur, relief from this Court's earlier judgment regarding adequate protection payments to Quaker is justified.[2] These reasons constitute something more than mere excusable neglect or newly discovered evidence, as contemplated by Rule 60(b)(1) and (b)(2), making relief available pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.

■ The Trustee's proposed investigation will not prejudice Quaker State, but on the other hand may serve to responsibly protect Quaker State from increased liability. The Trustee was appointed two days before the execution of the lease/purchase agreement with Phoenix on July 28, 1989. Given the duties imposed on the Trustee, the time which elapsed before the hiring of environmental counsel for the Trustee was approved, and the complexity of the issues involved, the Court finds that the Trustee's motions being considered were filed in a reasonable time.

■ It is well settled that where a contract of indemnity is one against loss or damage, the indemnitee cannot recover until he has made payment or otherwise suffered an actual loss or damage against which the covenant runs.[3] However, a cause of action is complete and the indemnitee may recover on a contract indemnifying against liability as soon as liability has become fixed, even though the indemnitee has sustained no actual loss or damage.[4] Where an indemnitee is liable to a third party, it is not necessary for the indemnitee to wait until suit has been filed against it before paying a claim to the party.[5]

In the light of Quaker State's covenant to indemnify Mid–Atlantic against claims, liabilities and causes of action, it is appro-

---

**2.** The Trustee estimates approximately $600,000 remains outstanding on Mid–Atlantic's debt to Quaker State. Environmental studies conducted by both Mid–Atlantic and Quaker State estimate the costs of remediating environmental problems at the facility to be well in excess of $6,000,000.

**3.** 41 AmJur2d *Indemnity* § 29 (1968).

**4.** *State–Planters' Bank & Trust Co. v. First National Bank of Victoria,* 76 F.2d 527 (4th Cir. 1935), *cert. denied,* 295 U.S. 764, 55 S.Ct. 923, 79 L.Ed. 1706 (1935) (interpreting Virginia law).

**5.** *Walton v. Cherokee Colliery Co.,* 70 W.Va. 48, 73 S.E. 63 (1911).

priate that funds of the estate earlier devoted to Quaker State in the form of adequate protection payments be directed to take reasonable and prudent steps to limit future liability of the estate as well as the future liability of Quaker State for environmental hazards at the site. If Quaker State were seeking return of the plant to perform tasks necessary to fulfill its obligations as an environmentally responsible entity, the Court would be faced with a different issue. In this instance, however, Quaker State is saying that neither they nor the Trustee has any obligation to address the soil contamination existing at the time of the sale of the facility to Mid–Atlantic. In the face of these arguments and on this record, it appears that only the Trustee is willing to accept the responsibility to comply with the spirit of state and federal environmental protection laws and to attempt to assure the health and welfare of the public.

The Court has the power and will make use of its power to assure that, should studies undertaken and treatment required bring new value to the estate, no party will benefit from an inequitable windfall at the expense of Quaker State. Accordingly, it is

ORDERED that the Trustee's motion to be relieved from making adequate protection payments to Quaker State Corporation pursuant to this Court's Orders entered January, 17, 1989 and August 16, 1989, is granted. It is further

ORDERED that Quaker State Corporation's motion for stay relief, filed July 9, 1990, is denied. It is further

ORDERED that the Trustee's motion to stay judgment, filed July 18, 1990, is granted.