# Richmond.

## Oriental Lumber Co. v. Blades Lumber Co.

### March 16, 1905.

### Absent, Whittle, J.

1. Evidence—*Case at Bar—Written Contract—Reference to Verbal Understanding.*—Parties to a contract for the sale of lumber agreed in writing "that the lumber at the mill is to be measured and shipped, we paying one-half of the costs of inspection and you paying the other half, as per our suggestions and verbal understanding; in other words the lumber is to be measured at the mill." Afterwards, the vendor's duty under the contract to deliver the lumber was assumed by a defendant who failed to deliver the lumber in consequence of a disagreement between the parties as to the manner in which it was to be delivered. Action was brought to recover damages for the breach, and the plaintiff offered to show a verbal agreement between the parties to the original contract as to the manner in which the lumber was to be delivered:

   *Held:* The language "in other words, the lumber is to be measured at the mill" shows what the verbal understanding between the parties was, and the evidence offered is inadmissible.

2. Contract to Do Collateral Thing and to Indemnify—*Breach—Damages.*—An agreement to perform and fulfil a contract made by another, and to deliver a given quantity of lumber to a third person which the other had contracted to deliver, and to indemnify and save harmless the other from all loss or damages which he may sustain or incur by reason of a failure to deliver the lumber as stipulated, is not a contract of mere indemnity, but is, in addition, a stipulation to do what the other had contracted to do, and, upon breach, the indemnitee has a right of action at once, before he has paid anything, to recover as damages the difference between the contract price and the market price of the lumber at the time of delivery. If, after action brought by the indemnitee, the amount

has been in good faith agreed upon between him and the other party to the contract, it may be given in evidence in the action against the indemnitor, and, though not binding on him, the indemnitee may recover such sum as he shows he is entitled to by reason of defendant's breach, not exceeding the amount fixed by such agreement.

3. CUSTOM—*Usage of Trade—Pleading and Proof.*—Generally, a party who relies on a custom or usage, must set it up in his pleadings, and establish it by evidence. It is generally regarded as a fact, to be averred and proved as any other fact. When pleaded, a custom or usage of trade in delivering lumber may be given in evidence, but whether or not it is established is a question for the jury under proper instructions from the court.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Edward R. Baird, Jr.,* for the plaintiff in error.

*White, Tunstall & Thom* and *W. W. Clark,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The Oriental Lumber Company, a corporation, instituted its action of assumpsit against S. B. Blades and others, partners trading under the firm name of Blades Lumber Company, to recover damages for an alleged breach of a contract in writing, in which the plaintiff was the party of the second part, and the defendants parties of the first part, entered into July 1, 1901, and which is as follows, omitting the formal parts:

. "Witnesseth, that whereas the Oriental Lumber Company has made and entered into a certain contract with the American

Lumber Company of Baltimore, Maryland, set forth in a letter written by the said Oriental Lumber Company to the said The American Lumber Company, dated on the second day of January, 1901, and accepted by the said The American Lumber Company in its reply to the said letter:

"And whereas the parties of the first part have become the purchasers of all the property and assets of the said party of the second part;

"And, whereas, a part of said contract, to-wit: One-half thereof has been fully performed and completed by the party of the second part, and one-half of the lumber in said contract mentioned, to-wit: Three million feet has been by the party of the second part furnished and supplied as in said contract mentioned.

"Now, therefore, this agreement witnesseth, that the parties of the first part, in consideration of the premises, and of the sum of five dollars ($5.00) in hand paid by the party of the second part to the parties of the first part, the receipt whereof is hereby acknowledged, do assume and undertake to perform and fulfil the residue or remaining one-half of said contract, and to deliver to the said American Lumber Company three (3,000,000) million feet of lumber, as in said contract provided, and to indemnify and save harmless the said party of the second part from all claims which may be lawfully asserted against it growing out of or arising from the failure of the parties of the first part to perform the remaining one-half of said contract, and to furnish three (3,000,000) million feet, a part of the lumber mentioned in said contract, as in said contract provided."

The letters referred to in the contract sued on are as follows:

NORFOLK, VA., Jan. 2, 1901.
"AMERICAN LUMBER COMPANY, Baltimore, Md.:

"Gentlemen,—Your letter of the 22d December to hand and noted.

"We now make you the following offer:

"We will sell you the entire cut of the Oriental mill for the year 1901, consisting of not less than six million feet and not more than seven million feet, barring fires, strikes, or unavoidable accidents on our parts, delivered in Baltimore, for $11.35 per thousand feet, delivered in Port Deposit, Md., for $11.45 per thousand feet, we guaranteeing 40 per cent. 1s and 2s, or should you want to ship from the mill to New York $8.85 per thousand feet, f. o. b. mill, we to cut the lumber from 4-4 boards, unless you wish it cut 5-4, 6-4 or 8-4, in that case we to cut it 6-4 or 8-4, and in the event it should stain from not being thoroughly dried we are not to lose anything on account of the lumber not drying from thickness; in other words, the grades to be credited to us the same as though it had not stained from drying.  We agree to hold half a million feet if you wish us to, and all over that amount we are to hold at your risk, you paying the insurance necessary for piling and taking care of same, and to advance us without charge on the lumber so held for your account, prices to be net cash.  It is further understood and agreed that the lumber at the mill is to be measured and shipped, we paying one-half of the cost of inspection, and you paying the other half, as per your suggestions and our verbal understanding; in other words, lumber is to be measured at the mill.  It is understood that should it fall short in grades or overrun 40 per cent. 1s and 2s, the difference to be adjusted between ourselves, or should we fail to agree, by disinterested parties.

"ORIENTAL LUMBER COMPANY,<br>
"By GEO. P. HUDSON."

"AMERICAN LUMBER Co.,<br>
"BALTIMORE, MD., Jan. 3, 1901.

"THE ORIENTAL LUMBER Co., Norfolk, Va.:

"Gentlemen,—Replying to your favor of the 2d inst., we

have concluded to accept your proposition as stated therein, with the slight modification that you will cut and kiln dry the lumber into 4-4 and 5-4 boards, and we to take the chances on drying any 6-4 and 8-4 we may desire you to make.

"We think you should guarantee at least 15 *per cent.* of the cut to be No. 1.

"It is also understood that the inspection at the mill is to be made by the rules of the N. C. Pine Association, this inspection having been recently adopted by the Lumber Exchange here. If you desire any contracts we can have them drawn up the next time we get together.

"Yours truly,

"S. C. ROWLAND,

"Dic. S. C. R."                         "Sec'y-Treas."

No part of the lumber which the Blades Lumber Company undertook to deliver to the American Lumber Company was delivered, because of a difference between those companies as to the manner in which it was to be delivered. The latter company insisted that it was to be separated and graded before delivery, and the former denied this, and refused to separate and grade it. The construction of the contract as contended for by the American Lumber Company was admitted to be correct by the Oriental Lumber Company, and this action was brought by the latter company to recover damages from the Blades Lumber Company for its failure to keep the contract with the plaintiff.

Upon the trial of the cause, there was a verdict and judgment in favor of the plaintiff for nominal damages. To that judgment this writ of error was awarded, upon the petition of the plaintiff.

The first assignment of error is to the action of the court in refusing to allow the plaintiff to show that there was a verbal agreement between the plaintiff and the American Lumber Company when they made their contract, not embraced in the

writing, as to the manner in which the lumber was to be delivered. The plaintiff claimed that it had the right to show this under the following language in its letter of January 2d, 1901, to the American Lumber Company, and which constitutes a part of the contract between the two companies. "It is further understood and agreed that the lumber at the mill is to be measured and shipped, we paying one-half of the cost of inspection and you paying the other half, as per your suggestions and our verbal understanding; in other words, the lumber is to be measured at the mill."

But for the language, "in other words, the lumber is to be measured at the mill," we are of opinion that the evidence sought to be introduced would have been admissible. Those words, however, must be regarded, we think, as showing what the verbal understanding between the parties was, and would, therefore, render parol evidence of that understanding inadmissible.

The next assignment of error is to the action of the court in refusing to give instruction No. 2, offered by the plaintiff, and in giving the court's instruction No. 5· (No. 3 as offered by the defendants). These instructions are as follows:

### *Plaintiff's Instruction No. 2.*

"The court instructs the jury that if they find for the plaintiff the measure of its damages is the difference between the contract price of the lumber and the market value of such lumber for the period during which such lumber was to have been delivered, and if they believe from the evidence that the American Lumber Company and the Oriental Lumber Company have agreed upon a certain sum as the amount of the liability of the Oriental Lumber Company to the American Lumber Company, because of its failure to receive said lumber according to the

contract, and that said amount was fairly and honestly arrived at and agreed on, and was not in excess of the difference between the contract price and market value of said lumber, they should fix the plaintiff's damage at that sum."

### Court's Instruction No. 5.

"The court instructs the jury that though they may believe from the evidence that the defendant broke the contract in the declaration mentioned, yet if they further believe from the evidence that the Oriental Lumber Company has not paid anything to the American Lumber Company on account of such breach, and that the amount of their liability to the American Lumber Company had not been definitely ascertained and fixed at the time this suit was brought on the 6th day of February, 1902, and that no suit had then been instituted by the American Lumber Company against the Oriental Lumber Company, the plaintiff can recover only nominal damages."

The evidence showed that at the time of the trial the plaintiff had not paid anything to the American Lumber Company, and that no action had been instituted against the plaintiff by the American Lumber Company to recover damages for the breach of the contract between them. There was evidence tending to show that the difference between the contract price and the market price of the lumber to be delivered under their contract during the period it ought to have been delivered was $5,862, and that after the institution of this action the plaintiff and the American Lumber Company had agreed upon that sum as the measure of the loss sustained by the latter company and the former's liability to it by reason of the non-delivery of the lumber.

If the contract between the plaintiff and defendant is strictly one of indemnity, it is well settled that the indemnitee cannot

recover until he has suffered actual loss. 2 Sedgw. on Dam. (8 Ed.), sec. 788; 3 Suth. on Dam., sec. 761.

The contract in this case is not one, however, of mere indemnity, but an agreement to perform and fulfill the residue or remaining one-half of the contract between the plaintiff and the American Lumber Company, and to deliver to that company three million feet of lumber, as in said contract provided, and to indemnify and save harmless the plaintiff from all claims which may be lawfully asserted against it, growing out of or arising from the failure of the defendants to perform the remaining one-half of said contract, and to furnish the three million feet to be furnished under it. The agreement is not in the alternative to deliver the lumber or to indemnify and save harmless, but is a direct and positive engagement to deliver the lumber. By it the plaintiff parted with the Oriental mill plant, the only means by which it could have performed its contract with the American Lumber Company, for the lumber which the plaintiff had agreed to furnish to that company was the "entire cut of the Oriental mill for the year 1901," and it could not have required the American Lumber Company to have received lumber cut elsewhere. It is clear, therefore, that by the agreement between the plaintiff and defendants it was intended that the latter should do what the former had undertaken to perform and what its contract with the defendants had placed beyond its power, and that the defendants' undertaking was not one of mere indemnity.

Where the indemnitee holds not merely an agreement to indemnity and save harmless, but an express promise to pay a debt or to do some particular act, the failure of the indemnitor to perform the act agreed gives the indemnitee a right of action before he has suffered any direct damages himself. 2 Sedgw. on Dam. (8 Ed.), sec. 786; 3 Suth. on Dam., sec. 761; *Cralle* v. *Meers*, 8 Gratt., at p. 527.

If the act which the indemnitor bound himself to do was to pay or discharge a debt, and he fails to do so, a right of action accrues at once to the indemnitee to recover the amount of the debt, without regard to the question of whether or not the indemnitee has paid it. 2 Sedgw. on Dam., ss. 785, 786; 3 Suth. on. Dam., s. 765; *Mills* v. *Dow,* 133 U. S. 423, 33 L. Ed. 717, .10 Sup. Ct. 413; *Locke* v. *Homer,* 131 Mass. 93, 41 Am. Rep. 199; *Rector, &c.* v. *Higgins,* 48 N. Y. 533.

Where the particular act or thing to be done by the indemnitor is other than to pay or discharge a debt, it is insisted by the defendants that the indemnitee's cause of action against the indemnitor does not become complete upon the indemnitor's failure to do the particular act or thing agreed to be done, and that no recovery can be had for such breach beyond nominal damages, if the indemnitee had paid no part of his liability for such breach, or the amount of such liability was not at the time suit was brought by the indemnitee definitely ascertained and fixed, or an action had not been brought against the indemnitor to establish and recover the same. The trial court was of this opinion, and so instructed the jury (instruction No. 5), at the request of the defendants.

We have been cited to no case, nor have we found one in our investigation, which passes upon the precise question involved here. The authorities pretty generally, however, declare that a right of action accrues as soon as there is a breach, whether the contract is to pay a debt, or to do some other particular act or thing.

The rule upon the subject is stated by Chief Judge Church, of the Court of Appeals of New York, in the case of *Kohler* v. *Matlage,* 72 N. Y. 259, 266, as follows: "It is settled law that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable, or to indemnify against liability, the right of action is complete on the defendant's failure to do

the particular thing he agreed to perform, or to pay the debt, or discharge the liability." See 2 Sedgw. on Dam., s. 786; 16 Am. & Eng. Enc. Law (2 Ed.), 179, where many cases are cited.

It is true Mr. Sedgwick, in his work on Damages, Vol. 2, sec. 790, suggests that the decisions which authorize a recovery before a loss has been actually sustained, appear somewhat to conflict with the important and fundamental rule, that actual compensation will not be given for mere probable loss. But this objection applies equally to cases where the contract is to pay a debt as where it is to do some other act. The only difference between the two classes of cases, in principle, is that in the one the liability is generally certain or capable of being made certain, while in the other an inquiry is necessary to ascertain such liability. In both classes of cases the recovery is damages. Where the particular act to be done is to pay or discharge a debt, the measure of damages is the debt. Where the particular act to be done is the delivery of lumber, as in this case, the measure of damages is the difference between the contract price and the market price of the lumber at the time of delivery.

Whether or not the plaintiff in this case could recover more than nominal damages from the defendants if the plaintiff and the American Lumber Company had not agreed upon the plaintiff's liability to that company for the non-delivery of the lumber which the defendants bound themselves to deliver, it is unnecessary to determine. It is true that agreement was made after this action was instituted, and that the defendants are not bound by the amount agreed upon. If after this action was brought, the plaintiff had paid the sum agreed upon to the American Lumber Company, it would clearly have had the right to prove it, and to the extent that it showed such payment to be proper, it could have recovered the same from the defendants, if the plaintiff was otherwise entitled to recover. 3 Suth. on Dam., s. 761. Having a cause of action for at least

nominal damages at the time this action was instituted, we see no reason why the plaintiff could not show at the trial that after its action was brought its liability to the American Lumber Company had been fixed by a judgment in favor of the American Lumber Company against the plaintiff, or by a *bona fide* agreement between them. It is true that neither the amount of the judgment nor the amount agreed upon would be binding upon the defendants, unless they had notice of the action in which the judgment was rendered and had an opportunity to be heard, or they were parties to the agreement settling the plaintiff's liability; but the fact that the liability so fixed would not bind the defendants is no sufficient reason why the plaintiff should not recover in this action such sum as it could show it was entitled to by reason of the defendants' breach of contract, not in excess of the amount fixed by such agreement. We are of opinion, therefore, that instruction No. 5, given by the court at the request of the defendants, did not correctly propound the law, and that instruction No. 2, offered by the plaintiff and rejected by the court, did correctly state the law and ought to have been given.

In its petition for the writ of error the plaintiff insisted that if this court was of opinion that the trial court erred in refusing to give the plaintiff's instruction No. 2, and in giving the court's instruction No. 5, it should not remand the cause for a new trial, but should enter judgment for the plaintiff for the sum of $5,682, with interest from the date of the verdict. This contention was abandoned in the oral argument, and properly so.

As this cause is to be remanded for a new trial, it is proper to notice a question raised by the defendants, as it may arise upon the next trial.

The court admitted evidence offered by the plaintiff as to the custom or usage of the trade in delivering lumber. This evi-

dence, it is claimed, was not admissible on two grounds—first, because the plaintiff had not pleaded it; and, second, because it was not admissible if it had been pleaded.

There is some conflict among the authorities as to the necessity of pleading a custom or usage of trade. See 12 Cyc. 1097 and notes; 22 Am. & Eng. Enc. Pl. & Pr. 405, &c., and cases cited. But whenever the question has been raised in this court, except in the case of *Hansbrough* v. *Neal, &c.*, 94 Va. 722, 27 S. E. 593, which was thought to be an exception to the general rule, it has been considered necessary for the party relying on such custom or usage to set it up in his pleadings. *Jackson's admr.* v. *Henderson,* 5 Leigh, s. p. 196; *Governor, &c.* v. *Withers,* 5 Gratt. 24, 50 Am. Dec. 95. And this view would seem to be the better one, since such customs or usages are generally regarded as facts, and like other material facts should be averred and proved. The court cannot take judicial notice of them.

Evidence of such custom or usage as was relied on in this case is clearly admissible under our decisions when properly pleaded. *Richlands, &c. Co.* v. *Hiltebeitel,* 92 Va. 91, 22 S. E. 806, and cases cited; *Reese* v. *Bates,* 94 Va. 722, 724, 26 S. E. 865. See note to *Governor, &c.* v. *Withers,* 50 Am. Dec. 95, 97. Whether or not such custom or usage was established was a question for the jury under proper instructions.

The judgment of the trial court must be reversed, the verdict set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*