Present:  Carrico, C.J., Compton, Stephenson, Lacy, Hassell,
Koontz, JJ., and Whiting, Senior Justice

LAKE MONTICELLO OWNERS' ASSOCIATION
                                           OPINION BY
v.   Record No. 950256       SENIOR JUSTICE HENRY H. WHITING
                                        November 3, 1995
JARED L. LAKE

               FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
                      F. Ward Harkrader, Jr., Judge


     This appeal involves the validity, construction, and

application of bylaw provisions of a nonstock corporation that is

subject to the Property Owners' Association Act.

     Lake Monticello, a large residential community in Fluvanna

County, is an essentially self-controlled community with its own

private utilities, roads, security force, and common amenities,

including a lake, golf course, swimming pool, and tennis courts.

 Access to the community is controlled by private security

officers at the main gate and by magnetic cards at other gates.

     Control of these facilities is vested in Lake Monticello

Owners' Association (LMOA), a nonstock corporation that is

subject to the provisions of the Property Owners' Association

Act, Code §§ 55-508 to -516.2.  By its very terms, this Act has

restricted and limited application.

> The Act does not apply
> to the (i) provisions of documents of, (ii) operations
> of any association governing, or (iii) relationship of
> a member to any association governing condominiums
> created pursuant to the Condominium Act ([Code] § 55-
> 79.39 et seq.), cooperatives created pursuant to the
> Virginia Real Estate Cooperative Act ([Code] § 55-424
> et seq.), time-shares created pursuant to the Virginia
> Real Estate Time-Share Act ([Code] § 55-360 et seq.),
> or membership campgrounds created pursuant to the
> Virginia Membership Camping Act ([Code] § 59.1-311 et
> seq.).

Code § 55-508(B). Additionally, this Act does not apply "to any nonstock, nonprofit, taxable corporation with nonmandatory membership which, as its primary function, makes available golf, ski, and other recreational facilities both to its members and the general public." Id.

LMOA's corporate purpose is set out in the various documents that create and regulate LMOA and the community it controls. The declaration provides that LMOA "shall operate and maintain the club, lake, roads, parks, and other recreational facilities." The declaration also subjects each lot owner, as a member of LMOA, to LMOA's "Articles [of Incorporation] and By-laws, including the payment of such charges and levys as may properly be made by the Association."

The articles of incorporation charge LMOA with responsibility for the "common welfare and safety of the residents of Lake Monticello." The bylaws charge LMOA to "provide for the necessary operation, administration, and government of Lake Monticello . . . and . . . to provide machinery for the interpretation, application, administration and enforcement of certain restrictions and covenants affecting all lots." LMOA's published "policy manual" contains its rules, regulations, and policies and states that "LMOA Rules and Regulations are defined in LMOA Documents (Covenants and Restrictions, Articles of Incorporation, By-Laws, Policies, Rules and Regulations). "Pursuant to LMOA's articles of incorporation

and bylaws, each lot owner is a member of LMOA with voting rights in the election and removal of directors and in the amendment, alteration, or repeal of its bylaws.

Additionally, the Property Owners' Association Act vests in a majority of LMOA members, as members of a property owners' association, the right to "repeal or amend any rule or regulation adopted by the board of directors" if such rule or regulation has been adopted by the board "with respect to use of the common areas [or] such other areas of responsibility assigned to the association by the declaration." Code § 55-513(A).[1] There is no similar statutory right given to shareholders, under the Virginia Stock Corporation Act, Code §§ 13.1-601 to -800, or to members, under the Virginia Nonstock Corporation Act, Code §§ 13.1-801 to -980. See Code §§ 13.1-624, -662, -823, and -846.

Jared L. Lake and some other members in LMOA were dissatisfied with a number of the bylaws, rules, regulations, and policies adopted by LMOA's board of directors and contained in LMOA's policy manual. Section 4.08 of the bylaws gives LMOA

[1]Code § 55-513(A) provides in pertinent part:

> The board of directors of the association shall have the power to establish, adopt, and enforce rules and regulations with respect to use of the common areas and with respect to such other areas of responsibility assigned to the association by the declaration . . . . A majority of votes cast, in person or by proxy, at a meeting convened in accordance with the provisions of the association's bylaws and called for that purpose, shall repeal or amend any rule or regulation adopted by the board of directors.

-3-

members the right to make proposals "appropriate for member action" for inclusion in the proxy statement and notice for an annual meeting. Acting pursuant to this bylaw provision, Lake and those other property owners filed a number of proposals to amend certain of LMOA's bylaws, rules, regulations, and policies at the next annual meeting of LMOA members.

A summary of the proposed amendments pertinent to this appeal follows:

1. Repeal of a requirement that a lot owner's invitee obtain a guest card or pass before entering the subdivision, even though they possess one of the lot owner's magnetic cards.

2. Imposition of a limitation on the boards' discretion in fixing annual green fees by exempting property owners who do not play golf from payment of such fees, and by specifying the minimum green fees to be fixed by the board.

3. Repeal of a provision for LMOA's compliance committee's assessment of "penalties, including the assessing of charges and similar sanctions," by transferring that function to the courts.

4. Repeal of a provision authorizing the appointment of members of LMOA's security force as special policemen under the provisions of Code § 15.1-144.

5. Amendment of provisions restricting access by prospective purchasers of properties in Lake Monticello by providing for a two-hour pass to be issued by the guards at the main gate.

Bylaw § 4.08(c)(1) and (6), respectively, provide that a member proposal "may be disqualified" from inclusion in LMOA's proxy statement and notice of meeting if "it is not a proper subject for action by members" or if "it deals with a matter relating to the ordinary business operations of the Association." Relying on these bylaw provisions and on other bylaw provisions which LMOA has since waived, the board ruled that the proposals "d[id] not qualify for inclusion on the LMOA proxy/ballot" and refused to include them in the proxy.

Lake filed this action as a motion for declaratory judgment seeking a construction of the provisions of Code § 55-513 and § 4.08 of the bylaws and a declaration that the proposals were proper for inclusion in LMOA's proxy statement.[2]  Following an ore tenus hearing, the trial court invalidated the provisions of § 4.08(c)(1) and (6) because they were "overly broad, arbitrary and in violation of [Code] § 55-513."  Thereafter, the court ruled that the association members were entitled to have these proposed amendments included in the proxy statement for

---

[2]LMOA stipulated that Lake was a proper party to bring the action.

-5-

appropriate action at the next LMOA members' meeting.  We granted LMOA an appeal.[3]

LMOA contends that the trial court erred in invalidating § 4.08(c)(1) and (6) of the bylaws.  Specifically LMOA argues that those provision are not inconsistent with Code § 55-513.  We agree.

A settled rule of statutory construction is that "[i]f apparently conflicting statutes can be harmonized and effect given to both of them, they will be so construed."  <u>Albemarle County v. Marshall</u>, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975); <u>Blue v. Virginia State Bar</u>, 222 Va. 357, 359, 282 S.E.2d 6, 8 (1981).  We think that this rule is equally applicable when there could be a conflict between a statute and corporate bylaws, and the bylaws may be construed to avoid that conflict.  Thus, in the context of this case, we construe the imprecise bylaw phrases "proper subject for action by members" and "relating to the ordinary business operations of the Association" to limit the board's disqualification right to those proposals which relate to matters within the exclusive control of the board.

Accordingly, we conclude that the trial court erred in holding that Code § 55-513 invalidated § 4.08(c)(1) and (6) of LMOA's bylaws.  Since we find that these subsections are valid,

---

[3]Lake filed no reply brief and thus did not make an oral argument.  Rule 5:33.

we must now decide whether the proposals were properly disqualified by the board.

LMOA contends that we need not inquire into the correctness of LMOA's decision since Lake failed to introduce any evidence showing that LMOA's board of directors acted in bad faith in making its decision.  This, according to LMOA, is a prerequisite for judicial review of LMOA's construction of its rule because a corporate board's decision is subject to a presumption of correctness under the "business judgment rule."

Under this rule, a corporate director ordinarily has no individual liability for business decisions made "in accordance with his good faith judgment of the best interests of the corporation."  Code § 13.1-870(A); see Izadpanah v. The Boeing Joint Venture, 243 Va. 81, 83, 412 S.E.2d 708, 709 (1992) (transfer of corporate assets); Giannotti v. Hamway, 239 Va. 14, 24, 387 S.E.2d 725, 731 (1990) (payment of compensation to corporate officers and directors).  And in an action to review the directors' business decision, the decision itself is also entitled to the same presumption.  Gottlieb v. Economy Stores, 199 Va. 848, 857, 102 S.E.2d 345, 352 (1958) (expulsion of member of nonstock grocers' cooperative marketing corporation for misleading advertising reflecting upon integrity of corporation); Penn v. Pemberton & Penn, 189 Va. 649, 661, 53 S.E.2d 823, 829 (1949) (continuance of corporate existence).

As the name implies, a necessary predicate for the

application of the business judgment rule is that the directors' decision be that of a <u>business</u> judgment and not a decision, such as that in this case, which construes and applies a statute and a corporate bylaw.  In the latter instance, a trial court reviews the decision just as it would review a similar decision by any other party.  <u>See</u> <u>Gottlieb</u>, 199 Va. at 857-58, 102 S.E.2d at 352-53 (even under business judgment rule, action of corporation must be in accordance with law and corporate powers); <u>cf.</u> <u>Bank of Giles County v. Mason</u>, 199 Va. 176, 181-82, 98 S.E.2d 905, 908 (1957) (court determines whether shareholder's exercise of common-law right to inspect corporate documents is made in good faith after corporation rejects request).

Therefore, we reject LMOA's contention that the presumption set forth in the business judgment rule should be applied when deciding whether LMOA properly construed its bylaws in disqualifying the proposals.  This brings us to a consideration of the correctness of LMOA's construction of § 4.08(c)(1) and (6) in disqualifying these proposals.  In deciding this issue, we are not concerned with the advisability or wisdom of the proposals, but only with whether Code § 55-315 and § 4.08 of the bylaws give Lake the right to submit these proposals to a vote of his fellow members of LMOA.

LMOA asserts a number of contentions in support of its argument that its board correctly rejected these proposals.  For the reasons which follow, we find no merit in any of these

contentions.

First, LMOA asserts that the members' right to amend LMOA's bylaws is "confined to matters such as conduct of meetings, elections of directors and officers, duties of officers and committees and other matters of internal concern" and does not include "any mundane detail relating to the day-to-day activities of the Association" or "the making of corporate policy and management decisions (such as, whether the security guards are deputized or setting green fees for the golf course.)"  In this case, however, we are not dealing with bylaw amendments of an ordinary corporation; rather, we are faced with specific statutory rights allowing LMOA members to amend or repeal LMOA's rules and regulations "with respect to use of the common areas and with respect to such other areas of responsibility assigned to the association by the declaration."  Code § 55-513(A).

With the exception of the third proposal herein that seeks to amend § 10.03 of the bylaws, the remaining proposals all seek to amend rules and regulations of LMOA.  These rules and regulations either restrict the future conduct of members and their invitees in the exercise of their rights in the community (guest cards or passes, green fees, and display of their homes for future sale) or subject their conduct to the control of LMOA's employees or agents (appointment of LMOA's security officers as special policemen).  As such, the proposals either deal with the members' use of parts of the common area or LMOA's

responsibilities in enforcing the declaration-imposed obligations upon each member to comply with LMOA's articles and bylaw provisions or suffer the penalties imposed by LMOA.[4] Accordingly, we think that Code § 55-513 authorizes members to suggest these proposals.

LMOA next argues that some of the proposals seek to amend its statements of policy, not its rules and regulations. However, if a policy of a governing body is binding upon the future conduct of its members, it is treated as a rule or regulation.  See Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 422 (1942) (order promulgating policy announcement, accompanied by statement that administrative agency would "follow" order is regulation within meaning of federal statute); cf. Pacific Gas & Electric Co. v. Federal Power Comm'n, 506 F.2d 33, 38 (D.C. Cir. 1974) ("A general statement of policy . . . does not establish a 'binding norm.' . . . A policy

---

[4]To the extent that LMOA's duly adopted rules and regulations expressly so provide, Code § 55-513(B) gives LMOA's board of directors the right to assess charges against members for violation of LMOA's rules and regulations.  Since the part of LMOA's policy manual that is in the record contains a schedule of charges and penalties for violations of LMOA's rules and regulations, we assume that LMOA's rules and regulations provide for imposition of such charges and penalties.

statement announces the agency's tentative intentions for the future").  Because these alleged policies bind the future conduct of LMOA's members and provide penalties for their violation, we conclude that each proposal at issue here seeks to amend a rule or regulation within the meaning of Code § 55-513.

Nevertheless, citing Kaplan v. Block, 183 Va. 327, 332, 31 S.E.2d 893, 895 (1944), LMOA contends that such proposals cannot divest the board of its duty of management and control by creating a "sterilized board of directors."  Importantly, Kaplan is inapposite because it involved a stock corporation, not a nonstock corporation that is subject to the Property Owners' Association Act.  Moreover, in contrast to Kaplan, the present proposals do not create a "sterilized board" in which every action of the board has to be approved by the members.  Id. at 335, 31 S.E.2d at 896.

Given the language of Code § 55-513 and the fact that LMOA members must submit to these rules, regulations, and binding policies as long as they own homes in Lake Monticello, we think the proposals, if enacted by majority vote, would merely impose limitations upon the board's powers authorized by this code section.  Accordingly, we conclude that the board of directors erred in excluding these proposals from the proxy statement. Although we will reverse that part of the trial court's judgment finding bylaw § 4.08(c)(1) and (6) invalid, we will enter a declaratory judgment in favor of Lake consistent with this

-11-

opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>