## CIRCUIT COURT OF SOUTHAMPTON COUNTY

Ronald R. Jackson
and Janet P. Jackson

v.

Quantrex Integrated
Technology Group, Inc.

February 12, 2002

Case No. (Law) CL01-169

BY JUDGE D. ARTHUR KELSEY

The plaintiffs, Ronald and Janet Jackson, bring this action against Quantrex Integrated Technology Group, Inc., claiming it violated various provisions of a stock purchase contract, promissory note, and employment agreement.[1] Quantrex demurs to the Jacksons' claims in Counts III and IV of the Motion for Judgment on the ground that they constitute claims for indemnity and, as such, are "premature and inadequate" as a matter of law because the underlying obligations (allegedly triggering the indemnity) have not in fact been satisfied. For the following reasons, the Court disagrees and overrules the demurrer on this ground.

Ronald and Janet Jackson formerly owned the controlling shares of FAST Internet Service, L.L.C., an internet service provider and retail seller of computers. *See* Motion for Judgment ¶ 2, at 1. In the fall of 2000, Quantrex

---

[1] Carl E. Eason, Jr., of Pretlow, Eason & Pretlow, P.C., represents the Jacksons. Glen M. Robertson of Payne, Gates, Farthing & Radd, P.C., represents Quantrex.

offered to buy FAST and to employ Ronald Jackson to manage the business. *Id.* ¶ 4, at 2. Quantrex entered into a contract with the Jacksons and the minority shareholders requiring Quantrex, among other things, (i) to "assume" the existing lease for the corporate office, (ii) to "bear all expenses and losses" incurred after the sale, including all post-sale charges on the corporate MCI Worldcom account, and (iii) to "make every effort to transfer" to Quantrex a then-existing balance owed on a Small Business Association loan so as to "release" a lien against Ronald Jackson's real property, and failing that, to "secure a release" of the SBA lien "by either paying off the loan or transfer of collateral [sic]." *Id.* ¶¶ 5-11, at 2-3. On each of these obligations, Ronald Jackson had previously executed personal guarantees to the creditors. On the SBA loan, both Ronald and Janet Jackson serve as personal guarantors of FAST's liability. *Id.* and Exhibit A.

In Counts III and IV, the Jacksons allege that Quantrex breached these contractual obligations. As a result of Quantrex's alleged default, the Jacksons continue to have liability on their personal guarantees as well as a continuing lien on Ronald Jackson's property. The Jacksons concede, however, that their creditors have not yet sued them on the guarantees. Nor has the SBA sought to enforce its lien through a judicial sale of the collateral. Given these concessions, Quantrex contends in its demurrer, the Jacksons have asserted indemnity claims prematurely. Until the Jacksons either pay these debts or suffer a foreclosure, Quantrex reasons, they cannot assert a breach of contract claim seeking what amounts to indemnity.

Under settled principles, a demurrer "tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001). A trial court should "consider as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from .the facts alleged." *Id.* A court, however, should not presume the "correctness of the pleader's conclusions of law." *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001); *see also Thompson v. Skate America, Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126 (2001).

In addition, the Jacksons submitted the stock purchase agreement as an exhibit to the Motion for Judgment. The Court may consider the contract alongside the plaintiff's factual allegations. *See* Virginia Supreme Court Rule 1:4(i) ("The mention in a pleading of an accompanying exhibit shall, of itself and without more, make such exhibit a part of the pleading."); *see generally Ward's Equip., Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997) (A court considering a demurrer "may ignore a

party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings."); *see also Welding, Inc.*, 261 Va. at 227, n. 3, 541 S.E.2d at 914, n. 3; *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156 (1991) ("On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading.").

In this case, Quantrex contends that Counts III and IV seek a form of contractual indemnity but do not allege that the Jacksons have "paid the obligations in question nor, even, that the creditors have made demand upon [the Jacksons] pursuant to the personal guarantees." Quantrex Demurrer ¶ 7, at 2. In response, the Jacksons concede that they have made no out-of-pocket payments to these creditors, but that should not matter, they contend, as Quantrex's breach (in not assuming the obligations and paying them directly) has exposed them to near certain liability personally as well as forfeiture of collateral subject to the SBA lien. The Jacksons have the better of the argument.

The common law has long recognized a unique form of contractual indemnity called "indemnity against liability." *Black's Law Dictionary* at 773 (7th ed. 1999). By definition, it "arises on the indemnitor's default, regardless of whether the indemnitee has suffered a loss." *Id.* As the U.S. Court of Appeals for the Fourth Circuit has explained it: "Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover." *State-Planters' Bank & Trust Co. v. First National Bank of Victoria*, 76 F.2d 527, 532 (4th Cir. 1935) (citations omitted). "Similarly a promise to indemnify against the existence of a liability is broken as soon as the liability is incurred, and the promisee is entitled to recover damages based on the amount of his liability although he has not satisfied it." 11 *Williston on Contracts*, § 1409, at 559 (3d ed. 1968).

Under this prematurity doctrine, the claim may be asserted upon the indemnitor's "failure to pay" the debts directly and the indemnitee need not "show that he had first paid" the debts himself. *Johnson v. Risk*, 137 U.S. 300, 308 (1890) ("It was not an agreement merely to indemnify [the indemnitee] from damage, but to assume the indebtedness and discharge him from liability."); *see also* 42 C.J.S. 2d, *Indemnity*, § 3, at 75 (1991) ("As regards the nature of the responsibility assumed by the indemnitor, a contract of indemnity is generally either one against liability or one against mere loss or damage; and with respect to the accrual of liability thereon ... the law makes a clear distinction between these two forms of indemnity contracts.") (footnote omitted); 41 Am. Jur. 2d, *Indemnity*, § 44, at 379 (1995) ("Where

the contract is one of indemnity against liability, an action may be brought as soon as the liability becomes fixed.").

In other words, if the contract "binds the indemnitor to do a certain act or to pay certain sums of money and performance of the act or payment of the sum will prevent harm or injury to, or liability upon, the indemnitee, the contract is one of the indemnity against liability. ... On an indemnity contract against liability, a right of action arises immediately on the nonperformance of the thing covenanted or nonpayment of the money the indemnitor bound himself to pay for exoneration of the indemnitee when it became due and payable." 9B Michie's Jurisprudence, *Indemnity*, § 7, at 495 (1995) (footnotes omitted). For example, in cases where:

> the defendant, in consideration of money loaned him by the plaintiff, promises to pay a third party, from whom the plaintiff borrows the money (the principal sum with interest) for that purpose, the plaintiff's cause of action does not accrue until the defendant breaches his contract; but after such breach, the plaintiff may maintain his action whether or not he has discharged his debt to the third party, because, for a breach of any contract, the law gives an immediate right of action unless by the terms of the contract such right is postponed.

*Id.* at 495-96 (footnotes omitted); *see also Kaklamanos v. Allstate Ins. Co.*, 796 So. 2d 555, 561 (Fla. Dist. Ct. App. 2001) (An indemnity against liability "may be defined as an undertaking of the indemnitor to stand in the place of the indemnitee in the performance of some act, as in the payment of a debt due to a third person. The right of action springs into existence with the accrual of liability and the failure to discharge it.").

The Virginia Supreme Court addressed this form of contractual indemnity in *Oriental Lumber Co. v. Blades Lumber Co.*, 103 Va. 730, 50 S.E. 270 (1905). In that case, one lumber company sold all of its assets to another lumber company. Among other things, the buyer company assumed the obligations of a lumber delivery contract initially entered into by the seller company. Because the seller company remained the named supplier on the delivery contract, the asset purchase agreement called for the buyer company to "fulfill" the remaining portion of the delivery contract and to "indemnify and save harmless" the seller company for any liability under that contract. *Id.*, 103 Va. at 732, 50 S.E. at 270. The buyer company failed to fulfill the delivery contract, exposing the seller company to full liability for the default. Before paying any damages to the delivery customer, the seller company filed suit against the buyer company, claiming it failed to assume

the delivery contract as promised and thereby breached its promise to "indemnify and save harmless" the seller company. *Id.*

Faced directly with the issue, the Virginia Supreme Court in *Oriental Lumber Co.* noted that, if the obligation were "strictly one of indemnity, it is well settled that the indemnitee cannot recover until he has suffered actual loss." *Id.*, 103 Va. at 736-37, 50 S.E. at 272. But where the contract is not strictly one of indemnity, the Court pointed out, then the "right of action accrues as soon as there is a breach, whether the contract is to pay a debt, or to do some other particular act or thing." *Id.*, 103 Va. at 738, 50 S.E. at 272 (emphasis added). As a result, when the indemnitee:

> holds not merely an agreement to indemnify and save harmless, but an express promise to pay a debt or to do some particular act, the failure of the indemnitor to perform the act agreed gives the indemnitee a right of action before he has suffered any direct damages himself. If the act which the indemnitor bound himself to do was to pay or discharge a debt, and he fails to do so, a right of action accrues at once to the indemnitee to recover the amount of the debt, without regard to the question of whether or not the indemnitee has paid it.

*Id.*, 103 Va. at 737-38, 50 S.E. at 272 (citations omitted); *see also Crall v. Meem*, 49 Va. (8 Gratt.) 496, 526 (1852) ("This was not a covenant of mere indemnity, but a covenant to pay the notes … . thus in effect it was a stipulation that by payment of the debts [the indemnitee] should be relieved from all responsibility as surety therefor.").

Quantrex's demurrer to Counts III and IV fails because the Jacksons allege three separate direct promises to either "pay a debt or to do some particular act." The first involves Quantrex's duty to "assume" the lease for the premises used by the business Quantrex just purchased. The second is Quantrex's agreement to pay all "expenses and losses" incurred after the sale, including all post-sale charges on the corporate MCI Worldcom account. The third includes Quantrex's commitment to "make every effort to transfer" to Quantrex the balance owed on the SBA loan so as to "release" the lien against Ronald Jackson's real property, and if that proved unsuccessful, to "secure a release" of the SBA lien "by either paying off the loan or transfer of collateral [sic]."

These obligations cannot be fairly characterized as "strictly one of indemnity," *Oriental Lumber Co.*, 103 Va. at 736, 50 S.E. at 272, but rather constitute commitments either "to pay a debt, or to do some other particular act or thing." *Id.*, 103 Va. at 738, 50 S.E. at 272. As a result, the Jacksons'

"right of action accrues as soon as there is a breach, whether the contract is to pay a debt, or to do some other particular act or thing." *Id.*, 103 Va. at 738, 50 S.E. at 272. Having alleged such a breach, Counts III and IV cannot be dismissed as premature.[2]

Quantrex contends that the statutes setting the accrual dates for limitation purposes have abrogated the indemnity-against-liability doctrine and the corresponding prematurity principle recognized by the common law. Quantrex's argument starts with the proposition that claims "for contribution or for indemnification" accrue (and thus commence the statutory limitation period) when the "contributee or the indemnitee has paid or discharged the obligation." Va. Code Ann. § 8.01-249(5) (Michie 2000). From there, Quantrex contends a claim that has not accrued for statute of limitation purposes cannot be asserted unless it qualifies as a third-party claim — which has been specifically carved out as an exception to the limitations accrual rule by § 8.01-249(5).

This syllogism, despite its superficial clarity, masks deeper analytical failures. To begin with, its first premise assumes that accrual for statute of limitation purposes necessarily marks the date before which a claim cannot be asserted. It is "axiomatic," Quantrex explains, that an indemnitee "cannot proceed" before the statute of limitation accrual date. *See* Quantrex's Brief at 3 (Jan. 29, 2002). The Virginia Code, however, chisels into stone no such axiom. And, despite Quantrex's confidence to the contrary, nothing in our statutes of limitation suggests that the date of accrual for purposes of running the applicable limitation period determines claim prematurity issues previously governed by the common law. The statutory accrual test helps calculate the date of a claim's legal death, but not necessarily its birth.

Consider, for example, a contractual claim for anticipatory repudiation. It can be asserted before the date of performance set in the contract. *See* John L. Costello, *Virginia Remedies*, § 18-12, at 653 (1997). If the elements of anticipatory repudiation exist, the claimant "may sue immediately" or, at his election, "endure the breach" and then sue. *Id.* In either case, however, the

---

[2] Despite Quantrex's claims otherwise, nothing in *Allied Productions, Inc. v. Duesterdick*, 217 Va. 763, 232 S.E.2d 774 (1977), addresses — much less implicitly overrules — the indemnity-against-liability doctrine recognized in *Oriental Lumber Co.* by the Virginia Supreme Court. *Duesterdick* deals only with provable damages in legal malpractice cases and has never been relied upon by any court to discredit *Oriental Lumber Co.* The only mention in *Duesterdick* of indemnity was by analogy, and the form of indemnity mentioned was indemnity against loss. *Duesterdick*, 217 Va. at 766, 232 S.E.2d at 776 (citing *American National Bank v. Ames*, 169 Va. 711, 748, 194 S.E. 784, 797 (1938)).

claim accrues for statute of limitation purposes on the date of the endured breach, not the earlier date of the anticipatory repudiation. *See High Knob Assocs. v. Douglas*, 249 Va. 478, 486-87, 457 S.E.2d 349, 354 (1995); *Heirs of Roberts v. Coal Processing Corp.*, 235 Va. 556, 562, 369 S.E.2d 188, 190 (1988); *Andrews v. Sams*, 233 Va. 55, 58, 353 S.E.2d 735, 738 (1987); *Taylor v. Wood*, 201 Va. 615, 620, 112 S.E.2d 907, 911 (1960).

The same can be said for the common law doctrine of divisible and indivisible contracts. A party to an indivisible, executory contract may elect between pursuing a remedy immediately upon the breach or waiting until the time fixed by the contract for full and final performance. *Suffolk City School Bd. v. Conrad Brothers, Inc.*, 255 Va. 171, 174-75, 495 S.E.2d 470, 472 (1998). The statute of limitation runs from the date of full and final performance, notwithstanding the earlier date of breach. *Id.* Nothing in the statute of limitation, the Virginia Supreme Court has held, eliminates "the distinction between divisible and indivisible executory contracts" or in any way repudiates the "former common law rule." *Id.*

Likewise, here, neither the text nor the history of § 8.01-249(5) shows any intent to abrogate the prematurity principles applied by *Oriental Lumber Co.* to indemnity-against-liability claims. To conclude otherwise would run headlong into the maxim that statutes should be "strictly construed" against displacing long-established common law principles. *See Patten v. Commonwealth*, 262 Va. 654, 658, 553 S.E.2d 517, 519 (2001); *Melanson v. Commonwealth*, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001). "Abrogation of the common law requires that the General Assembly plainly manifest an intent to do so." *Linhart v. Lawson*, 261 Va. 30, 35, 540 S.E.2d 875, 877 (2001). That is particularly true where, as here, the common law doctrine has its roots in English precedents.[3] *See* Va. Code Ann. § 1-10 (Michie 2001) (The common law of England "shall continue in full force" in Virginia and remain the "rule of decision, except as altered by the General Assembly.").

That said, even if accrual for limitation purposes governed the prematurity issue, Quantrex's argument overlooks the interplay between § 8.01-249(5) and § 8.01-230. The latter statute makes clear that a "right of action shall be deemed to accrue … when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except

---

[3] *See Oriental Lumber, Co.*, 103 Va. at 738-39, 50 S.E. at 272 (In support of the indemnity-against-liability doctrine, the Virginia Supreme Court relied on 2 *Sedgwick on Damages* § 786 (8th ed. 1891) and 16 *American & English Encyclopedia of Law* 179 (2d ed. 1900), two treatises addressing Anglo-American common law precedents).

where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute." Reading §§ 8.01-230 and 8.01-249 together, as we should,[4] they parallel the very distinction recognized in *Oriental Lumber Co.* Claims involving a breach of contract (*i.e.* "to pay a debt, or to do some other particular act or thing")[5] fall within the breach accrual rule of § 8.01-230. A claim properly characterized as "strictly one of indemnity"[6] (like, for example, a tort indemnity claim or an indemnity-against-loss claim) comes within the reach of § 8.01-249(5).

Quantrex quarrels with this reasoning, claiming it cannot be reconciled with *Virginia Int'l Terminals, Inc. v. Ceres Marine Terminals*, 879 F. Supp. 31 (E.D. Va. 1995) (Prince, M.J.). In that case, a stevedoring company sought contribution and indemnity against a marine terminal, alleging it exposed the stevedoring company to potential liability for a longshoreman's personal injury claim. The court dismissed the contribution and indemnity claims as premature.

In doing so, however, the court in *Virginia Int'l Terminals* never acknowledged the existence of the indemnity-against-liability doctrine or the Virginia and Fourth Circuit cases recognizing the doctrine. That leaves only three possibilities: either the litigants failed to make the court aware of the doctrine, or the court assumed (without discussion) that the doctrine had been displaced by statute, or the court thought it obvious — so much so that it could be left unsaid — that the stevedoring company was asserting only an indemnity-against-loss claim. Though the latter alternative appears most likely, any of the three options disarms *Virginia Int'l Terminals* from having any precedential value in support of Quantrex's arguments in this case. The principles of *stare decisis*, even when applied to otherwise binding case law, do not "foreclose inquiry" into an issue not previously "raised, discussed, or decided." *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 559-60, 554 S.E.2d 55, 59 (2001).

Even so, the rationale of *Virginia Int'l Terminals* turned on the fact that the stevedoring company asserted contribution and indemnity claims as free-

---

[4] "Statutes cannot be read in a vacuum." *Ruffin v. Commonwealth*, 35 Va. App. 79, 83, 542 S.E.2d 808, 810 (2001). Under settled principles, "if apparently conflicting statutes can be harmonized and effect given to both of them, they will be so construed." *Lake Monticello Owners' Ass'n v. Lake*, 250 Va. 565, 570, 463 S.E.2d 652, 655 (1995).

[5] *Oriental Lumber Co.*, 103 Va. at 738, 50 S.E. at 272.

[6] *Id.*, 103 Va. at 736, 50 S.E. at 272.

standing claims. That is, the contribution and indemnity claims were not "joined" to any other claims that would have already accrued. *Id.*, 879 F. Supp. at 32-33. Under Va. Code Ann. § 8.01-281(A), a "party" asserting either a "claim, counterclaim, cross-claim, or third-party claim" for indemnity may join that claim to other claims arising out of the same transaction or occurrence. The statute then goes on to say:

> *Such claim*, counterclaim, cross-claim, or third-party claim may be for contribution, indemnity, subrogation, or contract, express or implied; it may be based on *future potential liability*, and it shall be no defense thereto that the party asserting *such claim*, counterclaim, cross-claim, or third-party claim *has made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence.*

*Id.* (emphasis added). The legislature thereby codified the right of a "party" to join claims for indemnity based on "future potential liability" with other non-indemnity claims if it can be done so consistent with statutory joinder principles.

Quantrex apparently reads this statute to govern only impleader actions, given the limited proviso in § 8.01-249(5) for third-party claims. Section 8.01-281(A), however, expressly applies its prematurity principle to "[s]uch *claim*, counterclaim, cross-claim, or third-party claim." (Emphasis added.) The "such claim" phrase refers to any claim asserted by a party in the initial pleading that has been properly joined to other non-indemnity claims. If the expression "such claim" meant only counterclaims, cross-claims, and impleaders, the phrase would be completely redundant.

Unlike the situation in *Virginia Int'l Terminals*, the Jacksons have asserted, in addition to Counts III and IV seeking indemnity-against-liability, direct contract claims having no indemnity flavor to them at all. *See* Motion for Judgment ¶¶ 19-25 (Count I seeking recovery on a promissory note) and ¶¶ 42-44 (Count V seeking recovery for breach of employment agreement). Under § 8.01-281(A), Counts III and IV qualify as "such claims" that may be joined to the non-indemnity claims. It matters not, therefore, that the indemnity-against-liability claims assert "future potential liability" of the claimants to third-party obligees. *Id.*

The claims asserted by the Jacksons against Quantrex in Counts III and IV of the Motion for Judgment are neither premature nor inadequate as a matter of law. Crediting their well-pleaded factual assertions as true, the Court finds that the Jacksons have asserted viable claims for contractual indemnity against liability under common law principles. It is so ordered.